## In re FINLEY, KUMBLE, WAGNER, HEINE, UNDERBERG, MANLEY, MYERSON & CASEY, Debtor.

Bankruptcy No. 88 B 10377 (PBA).

United States Bankruptcy Court,
S.D. New York.

Jan. 19, 1993.

Dow, Lohnes & Albertson by Joseph F. Kelly, Jr., Kathleen W. Collins, New York City, for F.D.I.C., as Receiver for the Nat. Bank of Washington.

Gins & Seeber, P.C. by Richard H. Gins, Steven H. Greenfeld, Washington, DC, for Michael Jeffrey Calhoun.

Milbank, Tweed, Hadley & McCloy by Robert Drain, New York City, for Chapter 11 Trustee.

Togut, Segal & Segal by Susan Balaschak, New York City, for Creditors' Committee.

## MEMORANDUM DECISION DENYING MOTION OF CREDITOR TO TRANSFER VENUE OF CHAPTER 7 CASE OF PARTNER TO THIS DISTRICT IN WHICH PARTNERSHIP'S CHAPTER 11 CASE IS PENDING

PRUDENCE BEATTY ABRAM, Bankruptcy Judge.

A creditor of an individual debtor has sought to have this court transfer venue of his Chapter 7 case from Washington, D.C. to this district under Bankruptcy Rule 1014(b) because the debtor was a general partner of a partnership as to which a Chapter 11 case has been pending in this district since 1988. A liquidating plan has been confirmed for the partnership. The individual debtor has already received a discharge from all debts except that due to the creditor. A dischargeability adversary proceeding is pending as to that debt. For

the reasons more fully discussed below, the court has determined that the motion to transfer the case should be denied without prejudice to any venue motion the creditor might make in the adversary proceeding.

## STATEMENT OF FACTS

The relevant facts are undisputed.

This court has the earlier filed case. On February 24, 1988, an involuntary Chapter 7 petition was filed against the well-known national law firm of Finley, Kumble, Wagner, Heine, Underberg, Manley, Myerson & Casey (the "Partnership Debtor") by several banks, including the National Bank of Washington ("NBW"). Thereafter a voluntary petition under Chapter 11 was filed on behalf of the Partnership Debtor which had ceased its practice late in 1987 and was in the process of liquidating. This court directed the appointment of a Chapter 11 trustee. Francis Musselman was appointed the Chapter 11 trustee.

According to its disclosure statement, the Partnership Debtor was the fourth largest law firm in the nation and had offices in California, Florida, Maryland, Texas, Louisiana, Washington, D.C. and London. The Partnership Debtor had approximately 240 active partners, 450 associates and attorneys of counsel and 1000 support personnel.

One of the partners was Michael Jeffrey Calhoun (the "Partner Debtor"). He filed his Chapter 7 petition on November 27, 1990 with the bankruptcy court in Washington, D.C. where he resided. Since April of 1992, he has been living in Japan on a fellowship. He is expected to return to the Washington, D.C. area sometime in the spring of 1993. The Partner Debtor is represented by counsel.

It is the Federal Deposit Insurance Corporation, as Receiver for NBW ("FDIC"), which has sought to have this court transfer the Partner Debtor's case to this court. The FDIC asserts that the transfer of the Partner Debtor's case would be in the interest of justice and for the convenience of creditors.

This is not the first motion made before this court seeking to have venue of the Partner Debtor's case transferred to this district. Shortly after the Partner Debtor filed his Chapter 7 case, the Chapter 11 Trustee made a motion to have the case transferred here. By letter dated April 16, 1991, counsel for the Chapter 11 Trustee committed to dismiss that motion with prejudice and thereafter did so. The Chapter 11 Trustee did not object to the Partner Debtor's discharge and has not asserted in this court that he has any remaining rights against the Partner Debtor. Nor has the Chapter 11 Trustee taken any position on the FDIC's motion to transfer venue.

By the time the FDIC filed its motion, the Partner Debtor's case had been fully administered by the D.C. bankruptcy court as a no asset case. On April 30, 1991, the Debtor received a discharge of all his debts, except that due to the FDIC. In its pending adversary proceeding objecting to dischargeability, the FDIC seeks a determination that the Partner Debtor's obligation based on the $10 million loan made by NBW to the Partnership Debtor is nondischargeable. The FDIC contends that the loan was obtained by the Partnership Debtor by false representations and that these false representations may be imputed to partners of the Partnership Debtor.

The Partner Debtor moved for dismissal of the adversary proceeding. That motion was granted in September 1991 by the D.C. bankruptcy court to the extent that the FDIC's complaint was dismissed with leave to replead. However, the D.C. bankruptcy court did rule adversely to the Partner Debtor on the substantive issue of whether the Partnership Debtor's fraud, if proven, could be imputed to the Partner Debtor and form the basis of a nondischargeable debt. *See In re Calhoun (Calhoun v. Federal Deposit Insurance Corporation)*, 131 B.R. 757 (Bankr.D.C.1991).

Beginning almost immediately upon his appointment, the Chapter 11 Trustee sought to have the partners of the Partnership Debtor contribute to a liquidating plan of reorganization. Ultimately his efforts met with sufficient success that a plan of

liquidation has been confirmed., Creditors of the Partnership Debtor will not be paid in full. As required by the plan, the December 9, 1991 order of confirmation (the "Confirmation Order") contains an injunction against suits against contributing partners, including contribution actions by non-contributing partners. The Confirmation Order precludes a claimant from seeking to hold a non-contributing partner liable for more than the non-contributing partner's proportionate, equitable share of the deficiency with respect to the claimant's claim.

The FDIC urges that this Court is uniquely qualified to interpret the Confirmation Order. In its view, transfer of the Partner Debtor's case to this district would promote the interest of justice by ensuring a uniform interpretation of the Plan.

The FDIC urges that discovery in this district from the Chapter 11 Trustee is material. It further asserts that a number of material witnesses, including the former executive director of the Partnership Debtor, are located in this district.

A handful of other former partners of the Partnership Debtor have filed Chapter 7 petitions outside of this district. Most of those cases have not been transferred to this district for reasons not germane to this motion.[1] The FDIC expects still more partners to file petitions in the future.

## DISCUSSION

The substantive law governing motions to transfer venue is set forth in 28 U.S.C. § 1412 which provides that a case or proceeding may be transferred to another district "in the interest of justice or for the convenience of the parties". The procedure for making a motion to transfer venue of a bankruptcy case is set forth in Bankruptcy Rule 1014. The procedure for making a motion to transfer venue of an adversary proceeding is found in B.R. 7087.

B.R. 1014(b) is unusual in that it creates a mechanism by which venue motions are determined by a court other than the court in which the case is pending.[2] In contrast, under B.R. 7087, the motion must be made to the court in which the adversary proceeding is pending.

B.R. 1014(b) provides that if petitions are filed in different districts by or against a partnership and one or more of its general partners any motion to transfer venue should be made on motion filed in the district in which the first petition is filed. After hearing on notice, the court is to determine the district or districts in which the case or cases should proceed "in the interest of justice or for the convenience of the parties". Though the standard is stated in the disjunctive, there is considerable overlap between the two. However, while it is true that "what serves the convenience of the parties will also serve the interest of justice * * * the contrary is not necessarily true." *In re Portjeff Development Corp.,* 118 B.R. 184, 192 (Bankr.E.D.N.Y.1990).

Venue motions are entrusted to the discretion of the court and are to be decided upon the particular facts of each case, in light of the broad purposes of convenience and fairness. *In re Vienna Park Properties,* 125 B.R. 84, 86 (S.D.N.Y. 1991) (*citing Stewart Org., Inc. v. Ricoh Corp.,* 487 U.S. 22, 108 S.Ct. 2239, 101 L.Ed.2d 22 (1988)). The "interest of justice" is a broad and flexible standard which contemplates a consideration of whether transferring venue would promote the efficient administration of the bankruptcy estate, judicial economy, timeliness and fairness. *In re Manville Forest Products Corp (Gulf States Exploration Co. v. Manville Forest Products Corp.),* 896 F.2d 1384, 1391 (2d. Cir.1990). The party moving for a change of venue bears the burden of proof and that burden must be carried

---

1. The Chapter 11 Trustee allowed some of the cases to move forward for extended periods of time before seeking transfer to this district. In addition, this court held that B.R. 1014(b) did not apply since the partner/partnership relation was absent in those cases in which the debtor had been a partner of the Partnership Debtor

through a professional corporation rather than individually.

2. Although unusual, it is actually an efficient utilization of judicial resources since one court rather than two considers whether related cases should proceed in a single forum.

by a preponderance of the evidence. *In re Legend Indus., Inc.,* 49 B.R. 935, 938 (Bankr.E.D.N.Y.1985).

■ Courts typically balance a series of factors in determining venue motions.[3] *See, e.g., Matter of Commonwealth Oil Refining Co., Inc. (Commonwealth of Puerto Rico v. Commonwealth Oil Refining Co., Inc.),* 596 F.2d 1239, 1247 (5th Cir.1979), *cert. denied,* 444 U.S. 1045, 100 S.Ct. 732, 62 L.Ed.2d 731 (1980) (decided under former Bankruptcy Rule 116). In a venue motion under B.R. 1014(b) in which two or more cases are involved, the court needs to consider whether the intertwined relationship of the debtors requires the cases proceed in the same district. *See In re Andover Data Services, Inc.,* 35 B.R. 297, 301 (Bankr.S.D.N.Y.1983). This court perceives this last factor to be the threshold inquiry on the FDIC's motion.

■ Nothing remains to be done in the Debtor's bankruptcy case, save the final disposition of the dischargeability adversary proceeding. No further administration of the case, as opposed to the adversary proceeding, need occur except for the ministerial act of final closing of the case after the adversary proceeding is closed. The Partner Debtor has been examined, the trustee has filed a no-asset report, the Partner Debtor's creditors, which number in the thousands since all of the Partnership Debtors's creditors were included in the Partner Debtor's schedules, have been noticed of the case and the issuance of the discharge. At this time there is no intertwining relationship that requires these cases proceed in a single district.

Joint administration of the Partner Debtor's case and the Partnership Debtor's case at this time would simply be locking the barn door after the horse has escaped. A plan has been confirmed for the Partnership Debtor. The Partner Debtor is a non-contributing partner and has received a discharge of all claims save the FDIC one

as to which the dischargeability adversary proceeding is still pending. That proceeding involves a single creditor.

It would not be in the interest of justice to transfer the Partner Debtor's case to this district. Indeed it would impose a substantial and unnecessary administrative burden on the court system to require the transfer of the case between courts at this late juncture. The FDIC, in a twist, urges that because the Partner Debtor's case has been concluded no prejudice to creditors would occur from a transfer. However, since no creditor other than the FDIC has objected, the convenience of the Partner Debtor's other creditors is not at issue.

This court concludes that it would set an unfortunate precedent to allow a litigant in an adversary proceeding to seek an order transferring venue of the case as a means of transferring venue of the adversary proceeding. The reasons that the FDIC proffers for having the Partner Debtor's case transferred to this district are in reality reasons that the FDIC believes favor disposition of the adversary proceeding in this district. To permit transfer of the Partner Debtor's case under B.R. 1014(b) would be to allow the FDIC to use this court to make a decision which under B.R. 7087 ought properly to be made by the D.C. bankruptcy court.

A motion to transfer venue of the adversary proceeding can be granted even if it is not appropriate to transfer venue of a debtor's case. A dischargeability adversary proceeding does not concern the creditor body at large. The consideration of such a motion turns on facts specific to the adversary proceeding.

The FDIC's claims with respect to witnesses and trial efficiency should be addressed to the court in which the adversary proceeding is pending on a motion made under B.R. 7087. That court is in the best position to determine that motion, proper resolution of which would no doubt include

---

**3.** The factors most commonly mentioned are (1) the proximity of creditors of every kind to the Court; (2) the proximity of the debtor to the Court; (3) the proximity of witnesses necessary for the administration of the estate; (4) the location of the assets; (5) the economic administration of the estate; and (6) the necessity for ancillary administration if liquidation should result. *In re Portjeff Development Corp.,* 118 B.R. at 193 *(citing Commonwealth Oil ).*

an assessment of whether any amended complaint would survive a motion to dismiss.

The Court also finds the FDIC's concerns regarding interpretation of the Confirmation Order at best premature and at worst unfounded. Since the FDIC has not yet established that any liability of the Partner Debtor to it would be nondischargeable, it is unnecessary to consider at this time how the amount of that liability might be limited by the Confirmation Order. The question is not whether the plan and Confirmation Order are complex. They surely are. The issue is whether the provisions relevant to the limitations on the liability of non-contributing partners are complex. Those limitations were the subject of extensive discussions on the record in the Partnership Debtor's case in which the FDIC participated and derive from well-known and widely understood case law. This court has no reason to conclude on the present record that it is the only court able to interpret these provisions of the plan and correctly apply them. Moreover, it would be the Partner Debtor, and not merely the FDIC, that would seek to invoke those provisions since they serve to limit a non-contributing partner's liability to less than the face amount of any partnership debt.[4]

Since no aspect of the Partner Debtor's Chapter 7 case remains to be administered beyond the adversary proceeding, it is plain that transfer of the entire case is not appropriate and the FDIC's motion under B.R. 1014(b) should be denied. If the FDIC believes that venue of the adversary proceeding should be transferred to this court, it remains free to make a motion in the D.C. bankruptcy court under B.R. 7087 to transfer venue of the adversary proceeding.

A separate order denying the motion to transfer venue has been signed.

---

**4.** In the real world, the plan limitations are unlikely to ever be material. It is the Partner Debtor's post-discharge financial condition that will be the actual limitation on any recovery by the FDIC since even a limited judgment is likely to exceed the Partner Debtor's capacity to pay.