In the Matter of **EMERSON RADIO CORP.**, Majexco Imports, Inc., H.H. Scott, Inc., Emerson Computer Corp., Emerson Technologies & Development Corp., Emerson Technologies, L.P., Debtors.

Civ. A. No. 94–4380 (NHP).

United States District Court,
D. New Jersey.

Sept. 15, 1994.

---

Herbert S. Edelman, Kaye, Scholer, Fierman, Hays & Handler, New York City, for Geoffrey P. Jurick, Fidenas Intern. Ltd., GSE Multimedia Technologies Corp.

William S. Katchen, Lowenstein, Sandler, Kohl, Fisher & Boylan, Howard S. Greenberg, Ravin, Greenberg & Marks, P.A., Roseland, NJ, for Emerson Radio Corp.

Thomas P. Ogden, Delphine W. Knight, Davis, Polk & Wardwell, New York City, for Wayne J. Aranha, Provisional Liquidator of Fidenas Inv. Ltd.

### *LETTER OPINION*

POLITAN, District Judge.

This matter is presently before the Court on the motion of Geoffrey P. Jurick ("Jurick"), Fidenas International Limited ("FIN"), and GSE Multimedia Technologies Corporation ("GSE") (hereinafter the "Jurick Group") for an Order pursuant to Bankruptcy Rule 1014(b) transferring to this Court venue of the case commenced under 11 U.S.C. § 304 captioned *In re Wayne J. Aranha, Provisional Liquidator of Fidenas Investment Limited,* No. 94–B–42677 (BRL) which is now pending in the United States Bankruptcy Court for the Southern District of New York. I heard oral argument on August 31, 1994 and reserved decision. For the reasons outlined herein, the motion of the Jurick Group is **GRANTED.**

### I. BACKGROUND

On June 1, 1994, Wayne J. Aranha, the Provisional Liquidator of Fidenas Investment Limited ("FIL") filed a petition under § 304 of the Bankruptcy Code in the Bankruptcy Court for the Southern District of

New York to marshal the assets of FIL in the United States for the benefit of FIL's creditors (the "ancillary case"). The ancillary case sought to enjoin the Jurick Group from disposing of FIL's assets in the United States or the proceeds thereof; to enjoin the pursuit of claims to such assets; to obtain the turnover of assets owned by FIL in the United States or the proceeds thereof; and to conduct discovery in aid of such turnover and to assist the Provisional Liquidator in the discharge of his duties.

Chief Judge Lifland of the Bankruptcy Court for the Southern District of New York signed, on June 2, 1994, an Order to Show Cause with Temporary Restraints enjoining, *inter alia*, the Jurick Group from transferring, disposing of, or further encumbering FIL's assets. Chief Judge Lifland also ordered expedited discovery, ostensibly in anticipation of a trial on the Provisional Liquidator's request for preliminary injunctive relief. The New York Bankruptcy Court scheduled a September trial date in this ancillary case.

On August 8, 1994, the Jurick Group filed a motion before the Hon. Novalyn L. Winfield, United States Bankruptcy Judge for the District of New Jersey in the chapter 11 bankruptcy action entitled *In re Emerson Radio Corp., et al.*, chapter 11 Case Nos. 93–27874–79/NW, seeking an Order transferring venue of the aforementioned ancillary proceeding to the District of New Jersey pursuant to 28 U.S.C. § 1412 and Bankruptcy Rule 1014(b).

Immediately upon receiving the Jurick Group's Rule 1014(b) motion, counsel for the Provisional Liquidator sought a conference with Chief Judge Lifland to address the implications of the Jurick Group's Rule 1014(b) motion on the New York Bankruptcy Court's jurisdiction to proceed with the ancillary case. After a chambers conference on August 11 attended by counsel for all parties, the Chief Judge granted the Provisional Liquidator leave to move for an Order declaring that Rule 1014(b) could not divest the New York Bankruptcy Court of jurisdiction to proceed with the ancillary case brought by FIL.

On August 12, a telephone conference was conducted by Chief Judge Lifland and counsel for all parties to the ancillary proceeding. During that conference Chief Judge Lifland determined that Rule 1014(b) was indeed inapplicable and hence did not affect his jurisdiction over the § 304 case.

Later that day, a hearing was conducted before this Court on the application of Emerson Radio Corporation for an Order withdrawing the reference of the § 304 ancillary proceeding and for consolidation (pursuant to Fed.R.Civ.P. 42(a)) of the ancillary proceeding with the civil action entitled *Emerson Radio Corp. v. Donald K. Stelling, et al.*, No. 94–3393, currently pending before this Court. After hearing argument this Court withdrew the reference solely as to the Jurick Group's Rule 1014(b) motion and ordered counsel for the Provisional Liquidator not to proceed with the § 304 case until this Court decided the Rule 1014(b) motion.

## II. DISCUSSION

Section 1412 of Title 28 of the United States Code provides:

> A district court may transfer a case or proceeding under title 11 to a district court for another district, in the interest of justice or for the convenience of the parties.

28 U.S.C. § 1412. Section 1412 is complemented by Bankruptcy Rule 1014(b), which states in relevant part:

> If petitions commencing cases under the Code are filed in different districts by or against . . . (4) a debtor and an affiliate, on motion filed in the district in which the petition filed first is pending and after hearing on notice to the petitioners, the United States trustee, and other entities as directed by the court, the court may determine, in the interest of justice or for the convenience of the parties, the district or districts in which the case or cases should proceed.

Bankruptcy Rule 1014(b). It is the present contention of the Jurick Group that venue of the ancillary proceeding should be trans-

ferred to this Court in the interests of justice.[1]

■ Initially, this Court must determine whether there is a relationship between a debtor (an appellation that the Jurick Group would accord Emerson) and an affiliate (a position the Jurick Group claims is occupied by FIL). Section 101(2)(B) of Title 11 defines "affiliate" in relevant part as a:

[C]orporation 20 percent or more of whose outstanding voting securities are directly or indirectly owned, controlled, or held with power to vote, by the debtor, or by an entity that directly or indirectly owns, controls, or holds with power to vote, 20 percent or more of the outstanding voting securities of the debtor, other than an entity that holds such securities ...

11 U.S.C. § 101(2)(B).

A review of the Jurick Group's papers reveals that FIL is indeed an "affiliate" of Emerson as that term is defined in 101(2)(B) because at least 20% of the voting stock of both FIL and Emerson is directly or indirectly owned by Centralinvest, S.A., a Luxembourg corporation. Noted specifically, Centralinvest owns directly 20% of FIL and 100% of FIN; FIN, for its part, owns approximately 50% of the common shares of Emerson. Thus, it is clear that FIL is affiliated with Emerson for the purposes of Rule 1014(b) based on the level of Centralinvest's ownership interest in both companies. This is so even though FIL and Emerson do not own stock in one another. *See In re PortJeff Development Corp.,* 118 B.R. 184, 186 (Bankr.E.D.N.Y.1990) *(two companies sharing common parent are affiliates under Bankruptcy Rule 1014(b) although neither company had an ownership interest in the other).*

The Court does note the Provisional Liquidator's position that the aforementioned relationship is simply too indirect to indicate any opportunity for one entity to control even indirectly the other, as the House Report on the Bankruptcy Code describing the affiliate definition seemingly requires.[2] However, while this Court does not dispute the fact that some type of direct or indirect control must exist before there can be any affiliate relationship, it is equally incontrovertible that the literal language of 101(2)(B) provides that such control exists by virtue of the debtor holding, directly or indirectly, 20% of the outstanding voting shares of the affiliate, or by that entity holding 20% of the debtor's voting shares. While any affiliation between Emerson and FIL must necessarily pass indirectly through Centralinvest, it is clear from an examination of the respective ownership interests detailed above that FIL must be deemed an affiliate of Emerson for the purposes of Rule 1014(b).

■ Additionally, the Provisional Liquidator contends that Emerson, by virtue of its reorganization, no longer qualifies as a "debtor" insofar as the application of Rule 1014(b) is concerned. A "debtor" means a "person ... concerning which a case under this title has been commenced." 11 U.S.C. § 101(13).[3] It is the Provisional Liquidator's argument that FIL is not an affiliate of any debtor, since the reorganized Emerson is not a "per-

---

**1.** There is no question that the motion to transfer venue is properly before this Court. Rule 1014(b) provides that when cases against a debtor and an affiliate are commenced in different courts, venue may be transferred on "motion filed in the district in which the petition filed first is pending." In the instant case, Emerson filed its chapter 11 action in the Bankruptcy Court for the District of New Jersey on September 29, 1993, well before the June 2, 1994 commencement of the ancillary proceeding. The fact that the Bankruptcy Court for the District of New Jersey has confirmed the Emerson Plan of Reorganization does not affect the requirement that the first filed court decide this motion, as a case remains pending for Rule 1014(b) purposes until it is closed pursuant to § 350 of the Bankruptcy Code. *In re Wilson,* 154 B.R. 769, 771 n. 3 (Bankr.M.D.Ala.1993).

**2.** "The use of 'directly or indirectly' in [11 U.S.C. § 101(2)(B)] is intended to cover situations in which there is an opportunity to control, and where the existence of that opportunity operates as direct control." House Report No. 95–595, 95th Cong., 1st Sess. 309 (1977), U.S.Code Cong. & Admin.News 1978, p. 5772.

**3.** As noted, as "affiliate" means, *inter alia,* a "corporation 20 percent or more of whose outstanding voting securities are directly or indirectly owned, controlled, or held with power to vote, by the *debtor,* or by an entity that directly or indirectly owns, controls, or holds with power to vote, 20 percent or more of the outstanding voting securities of the *debtor* ..." 11 U.S.C. § 101(2)(B) (emphasis supplied).

son ... concerning which a case ... has been commenced." While the Provisional Liquidator concedes that what it terms the "old" Emerson was a debtor prior to the entry of a March 31, 1994 Confirmation Order, it nevertheless asserts that this "old" Emerson no longer exists and all of its outstanding voting stock was expressly cancelled by operation of the Reorganization Plan confirmed on that date.

This protestation must also fail. In reply to the claim that Emerson has forfeited its debtor status by virtue of its reorganization, the Jurick Group states that the reorganized or "new" Emerson is still the debtor under the terms of the Reorganization Plan. For example, an examination of § 1.01 of the Plan reveals that the term "debtor" as used in the Plan includes "Emerson Radio Corp., a New Jersey corporation." *See* Ex. B of the Jurick Group's Reply Brief. In addition, the Plan defines "Reorganized Emerson" to mean Emerson Radio Corporation as of the effective date of the Plan "or any successor thereto by merger, consolidation, or otherwise." *Id.* Finally, § 6.01 of the Plan, which states that "Emerson Radio Corp. shall, subsequent to the Reincorporation ... and as the Reorganized Emerson, continue to exist after the Effective Date as a separate corporate entity, with all of the powers of a corporation," clearly indicates that the reorganized Emerson, while it may be "new," is nevertheless still considered a debtor. *Id.*

Moreover, the language in the Confirmation Order dated March 31, 1994 (approved by Judge Winfield and consented to by the appropriate parties) confirming the Fourth Amended Plan of Reorganization substantiates a finding of post-reorganization debtor status on the part of Emerson. For example, the Order, in enumerating the debtors' scope of authority after reorganization, refers to the debtors as "reorganized entities under the Plan and this Confirmation Order." Confirmation Order, ¶ 24. Similarly, the Confirmation Order provides at ¶ 28 that, "On the Effective Date, the Plan Documents shall become effective immediately thereon and the *Reorganized Debtors be, and hereby are, authorized to execute and consummate*

the Plan *of Reorganization and Agreement or Merger and effect a reincorporation of the reorganized Emerson Radio Corp. ...*" *Id.* at ¶ 28 (emphasis supplied).

Finally, this Court notes that, contrary to the Provisional Liquidator's assertions, the confirmation of the Reorganization Plan does not signify that the reorganized entity is no longer a debtor. Indeed, the Jurick Group has cited 11 U.S.C. § 1142(b) for the proposition that a reorganized entity may still be a debtor even though a plan of reorganization has been confirmed. Section 1142(b) states that:

The court may direct the debtor and any other necessary party to execute or deliver or to join in the execution or delivery of any instrument required to effect a transfer of property dealt with by a confirmed plan, and to perform any other act, including the satisfaction of any lien, that is necessary for the consummation of the plan.

11 U.S.C. § 1142(b). As § 1142 addresses the implementation of a confirmed plan of reorganization, it seems patent that the debtor (here, Emerson) that initially filed the petition maintains its debtor status until the plan has been fully consummated and the case is closed. Indeed, the Emerson chapter 11 case will remain open, and hence Emerson will remain a debtor, until such time as the estate is fully administered; in fact, a case is closed only by order of the bankruptcy court pursuant to 11 U.S.C. § 350, after it determines that the estate is "fully administered." *See In re Reed,* 89 B.R. 100, 104 (Bankr. C.D.Cal.1988), *aff'd,* 940 F.2d 1317 (9th Cir. 1991). It is conceded that in this case no order has been issued under § 350. Transcript of Proceedings, Aug. 31, 1994, 54:15–23. Accordingly, for the aforementioned reasons, it is the determination of this Court that FIL is an affiliate of Emerson for the purposes of Rule 1014(b).

▮ Having so determined, the only issue left for decision is whether the ancillary case should proceed in this Court in the interest of justice.[4] The phrase "interest of

---

4. Rule 1014(b) permits the court to determine

the district(s) in which a case should proceed

justice" is not defined either in § 1412 or Rule 1014(b), and indeed courts have noted that it is "an elusive term not easily amenable to definition." *In re Pinehaven Assocs.*, 132 B.R. 982, 990 (Bankr.E.D.N.Y.1991). A party seeking to transfer venue of a bankruptcy proceeding bears the burden of proving by a preponderance of the evidence that a transfer is warranted. *In re Manville Forest Prods. Corp.*, 896 F.2d 1384, 1390–91 (2d Cir.1990). Ultimately, the decision to transfer venue of a case under title 11 is committed to the discretion of the court. *See In re Pinehaven*, 132 B.R. at 987.

■ After reviewing the papers submitted by both the Jurick Group and the Provisional Liquidator, and after exploring the issue extensively at oral argument, this Court concludes that venue of the § 304 ancillary proceeding should be transferred to this Court in the interest of justice. As noted above, FIL, the foreign debtor in the ancillary case, has been pivotal to Emerson's reorganization; indeed, prior to Emerson's filing date, FIL was the controlling shareholder of Emerson. Moreover, at the time of Emerson's filing, Donald Stelling (who indirectly owned 60% of FIL along with the Jurick Group's 40% ownership interest) was chairman of the board of directors of both Emerson and FIL, with Jurick serving as Emerson's CEO and a director of FIL.

It is the Jurick Group's contention that Mr. Stelling reneged on promises made to Emerson through FIL to provide the majority of the 75 million dollars necessary to fund the Emerson Plan, thereby placing the reorganization proceedings in jeopardy and leaving Emerson on the brink of liquidation. *See* Jurick Group's Br. at 8–9. The Jurick Group also states that the main goal of the § 304 proceeding is to obtain the turnover of essentially all of the Emerson shares presently held by FIN and GSE, shares distributed to them pursuant to the Emerson Plan and the Confirmation Order.

Consequently, from the foregoing it seems that the shares in dispute in the § 304 case were issued under the Plan and that the

based upon the interest of justice or the convenience of the parties. In this case, the Jurick Group seeks transfer of venue to the District of

determination in that ancillary proceeding regarding their ultimate ownership will establish which entity or individuals will control Emerson. Clearly, the interest of justice is best effected if that decision is assayed by the court which is most, indeed intimately, familiar with the history of the chapter 11 case. *See, e.g., In re Pinehaven*, 132 B.R. at 990 (the interest of justice inquiry "would include looking into the desirability of having a judge familiar with applicable law [and facts] hear and determine issues arising in the case"). While the New York Bankruptcy Court has been involved in this matter (insofar as the ancillary case is concerned) since June 1, 1994, Judge Winfield of the New Jersey Bankruptcy Court (and, by extension, this Court) has shepherded this matter since the chapter 11 filing in September 1993 up to and including its confirmation of the Plan in March of 1994.

Moreover, transfer of venue to this Court is particularly appropriate here, since in the Confirmation Order and the Emerson Plan, the New Jersey Bankruptcy Court reserved exclusive jurisdiction, *inter alia*, "to hear and determine disputes arising in connection with the interpretation, implementation or enforcement" of the Plan. *See* Confirmation Order at ¶ AB; Emerson Plan, Art. XI ("Retention of Jurisdiction"). By seeking a turnover of the aforementioned shares, the ancillary proceeding involves a dispute with regard to the Emerson Plan's implementation and enforcement, and hence is within the ambit of the Court's post-confirmation jurisdiction. Thus, for this reason, and the reasons expressed above, it is clear that a transfer of venue of the § 304 case from the Bankruptcy Court for the Southern District of New York to this Court is warranted in the interest of justice as required by Rule 1014(b).

## III. CONCLUSION

Given the foregoing, it is the determination of this Court that the Jurick Group's motion to transfer to this Court venue of the case commenced under 11 U.S.C. § 304 captioned

New Jersey solely under the interest of justice portion of the Rule. *See* Transcript of Proceedings, August 31, 1994, at 22:7–10.

*In re Wayne J. Aranha, Provisional Liquidator of Fidenas Investment Limited,* No. 94–B–42677 (BRL) which is now pending in the United States Bankruptcy Court for the Southern District of New York, to this Court is hereby **GRANTED** and venue of the § 304 case is hereby **TRANSFERRED** to this Court, which already had jurisdiction over the underlying chapter 11 proceeding by virtue of this Court's Order dated September 14, 1994 withdrawing the reference from the New Jersey Bankruptcy Court. The Court will presently **VACATE** that September 14, 1994 Order withdrawing the reference and will hereby **REINSTATE** the reference to the Bankruptcy Court for the District of New Jersey as to both the underlying chapter 11 proceeding and the ancillary § 304 proceeding.