50

In re EMERSON RADIO CORP.; Majexco
Imports, Inc.; H.H. Scott, Inc.; Emerson
Computer Corp.; Emerson Technologies
& Development Corp.; Emerson Tech-
nologies, L.P.; Wayne J. Aranha, Provi-
sional Liquidator of Fidenas Investment
Limited, Debtors,

Wayne J. Aranha, Provisional Liquidator
of Fidenas Investment Limited,
Appellant.

In re Wayne J. ARANHA, Official Liqui-
dator of Fidenas Investment Limited,
Debtor In A Foreign Proceeding, Peti-
tioner,

The Honorable Novalyn L. Winfield,
United States Bankruptcy Judge,
Nominal Respondent.

Nos. 94–5657, 95–5100.

United States Court of Appeals,
Third Circuit.

Argued March 2, 1995.

Decided April 3, 1995.

Karen E. Wagner (argued), Thomas P.
Ogden, Davis, Polk & Wardwell, New York
City, for appellant/petitioner.

Herbert S. Edelman (argued), Scott Ber-
man, Stephan W. Milo, Joshua Fruchter,
Kaye, Scholer, Fierman, Hays & Handler,
New York City, for appellees.

William S. Katchen (argued), Paul F. Carv-
elli, Lowenstein, Sandler, Kohl, Fisher &
Boylan, Roseland, NJ, for debtor/intervenor
Emerson Radio Corp.

Before: GREENBERG, NYGAARD, and McKEE, Circuit Judges.

## OPINION OF THE COURT

GREENBERG, Circuit Judge.

In this opinion we dispose of two cases. In number 94–5657, appellant-petitioner, Wayne J. Aranha, seeks reversal of an order entered by the district court pursuant to Bankruptcy Rule 1014(b) transferring venue of a case pending in the Bankruptcy Court for the Southern District of New York ("the New York bankruptcy court"), to the District of New Jersey. Aranha had filed the case in New York under section 304 of the Bankruptcy Code, 11 U.S.C. § 304, ancillary to a Bahamian insolvency proceeding. We find that the transfer was proper and therefore will affirm the order of the district court.

Following the transfer, the Bankruptcy Court for the District of New Jersey ("the New Jersey bankruptcy court") dismissed the transferred case pursuant to section 305(a) of the Bankruptcy Code, 11 U.S.C. § 305(a), as it concluded that the controversy arising from the ancillary case was essentially a shareholder dispute. In case number 95–5100, Aranha seeks a writ of mandamus directing the New Jersey bankruptcy court to withdraw the dismissal order.[1] Because Aranha has available another procedure for review of the dismissal order, i.e., an appeal to the district court, we will deny the petition.

## I. FACTUAL BACKGROUND

On September 29, 1993, Emerson Radio Corp. and its subsidiaries filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code in the New Jersey bankruptcy court.[2] At that time, Fidenas Investment Limited ("FIL") owned approximately 20% of Emerson's common stock and controlled Emerson. Geoffrey Jurick and Petra Stelling, among others, indirectly owned FIL through various entities. Jurick and Donald Stelling, Petra Stelling's husband, served on the boards of directors of Emerson and FIL. In addition, Jurick was Emerson's chief executive officer, and Donald Stelling was its board chairman.

Earlier in September 1993, Emerson and its bank lenders entered into an Agreement in Principle to implement a plan for its reorganization. The Agreement in Principle called for FIL to provide $15 million to secure a credit facility for Emerson's operations as a debtor in possession, and to provide $75 million to fund the reorganization plan. In exchange, FIL was to receive 90% of the common stock of the reorganized Emerson and a $45 million promissory note. Based on this funding commitment, Emerson, FIL, and the bank lenders also entered into a Voting Agreement providing for the bank lenders to vote to accept the reorganization plan.

Implementing these agreements, Petra Stelling provided FIL with the $15 million, which FIL used to obtain the credit facility for Emerson. About two months after the Chapter 11 filing, Donald Stelling resigned from his positions at Emerson and as a director of FIL. In his resignation letter, Donald Stelling indicated the following:

> Regarding the Emerson restructuring, the refinancing is to be provided by FIL. Neither I nor the Stelling family have ever been personally liable for the obligations of FIL. I strongly encourage you to take all steps necessary to assure yourself that FIL will be able to perform its obligations to provide financing for the Emerson restructuring.

Jurick alleges that Donald Stelling's actions required him to find alternative sources for the funding which he expected the Stellings to provide. Jurick was successful in this endeavor, as he raised $45 million from Congress Financial Corp. for post-confirmation financing and $14.8 million from third-party investors. He then caused this $14.8 million

---

1. Aranha initially sought a writ of prohibition to prevent the New Jersey bankruptcy court from entering the order dismissing the case. Inasmuch as the bankruptcy court has dismissed the case, we will consider only the petition for a writ of mandamus.

2. We largely take the facts from the bankruptcy court's opinion, *In re Wayne J. Aranha*, No. 94–26903 (Bankr.D.N.J. Feb. 16, 1995).

and the $15 million used to secure the credit facility ($15.2 million with interest) to be invested in Emerson indirectly through various entities he controlled rather than through FIL.

On March 30, 1994, the New Jersey bankruptcy court confirmed the reorganization plan. As a result of the change in the sources of financing and thus of the reorganization plan, the common stock in reorganized Emerson was not issued to FIL. Rather, the stock was issued to the following entities: 15,552,542 shares to Fidenas International Limited ("FIN"); 12,000,000 shares to GSE Multimedia Technologies Corporation ("GSE"); 1,600,000 shares to Elision International, Inc. ("Elision"); and 847,458 shares to Gerhard Eisenbach (collectively, "the Emerson shares"). Jurick controls FIN and GSE.

About two weeks later, certain of FIL's creditors who were also its shareholders, and whose actions the Stellings apparently controlled, instituted insolvency proceedings against FIL in the Bahamas. The Bahamas Supreme Court then appointed Wayne J. Aranha as provisional liquidator for FIL. Aranha subsequently applied to and obtained permission from the Bahamas Supreme Court to proceed against Jurick and FIN for wrongfully diverting FIL's assets, *i.e.*, the Emerson shares. The Bahamas court later appointed Aranha official liquidator of FIL.

## II. PROCEDURAL BACKGROUND

On June 1, 1994, Aranha filed the ancillary case under section 304 in the New York bankruptcy court seeking to administer FIL's assets located in the United States, specifically the Emerson shares. Aranha then sought to enjoin Jurick, FIN, and GSE (collectively, "the Jurick Group") from disposing of the Emerson shares. The New York bankruptcy court entered a temporary restraining order to that effect.

On August 8, 1994, the Jurick Group moved in the New Jersey bankruptcy court for an order transferring the venue of the ancillary case to the District of New Jersey pursuant to 28 U.S.C. § 1412 and Bankruptcy Rule 1014(b). Emerson then applied to the district court for an order withdrawing

the reference of the ancillary case and consolidating the ancillary case with a related civil action pending before the district court. On August 12, 1994, the New York bankruptcy court held a telephone conference and determined that Rule 1014(b) was inapplicable to the ancillary case. Later that same day, however, the district court held a hearing and withdrew the reference to the New Jersey bankruptcy court but only as to the Rule 1014(b) transfer motion. *In re Emerson Radio Corp.*, 173 B.R. 490, 492 (D.N.J. 1994). Then on September 15, 1994, the district court granted the transfer motion and reinstated the reference of the ancillary case to the New Jersey bankruptcy court. *Id.* at 495–96.

On September 27, 1994, Aranha moved in the district court for an order certifying the transfer order for appeal under 28 U.S.C. § 1292(b). The court denied the motion but Aranha nevertheless filed an appeal from the transfer order.

The Jurick Group then moved in the New Jersey bankruptcy court to dismiss the ancillary case. In opposition, Aranha argued that his appeal to this court from the transfer order divested the New Jersey bankruptcy court of jurisdiction. Nevertheless, on February 16, 1995, the New Jersey bankruptcy court filed its opinion concluding that it did have jurisdiction to entertain the motion to dismiss, reasoning that FIL could not appeal from the transfer order so the appeal did not divest it of jurisdiction. The bankruptcy court then dismissed the ancillary case under section 305(a) of the Bankruptcy Code, 11 U.S.C. § 305(a), in the interests of FIL, its creditors, and its shareholders. *In re Wayne J. Aranha*, No. 94–26903 (Bankr.D.N.J. Feb. 16, 1995).

Aranha took two procedural steps in response to the dismissal motion and order: (1) he appealed to the district court from the order of dismissal; and (2) he filed the mandamus petition pending before us. We ordered that answers be filed to the mandamus petition and the parties thereafter presented consolidated arguments on the appeal and the petition. This opinion disposes of both matters.

## III.   JURISDICTION

■ At the start of this appeal, the Jurick Group and Emerson contended that this court did not have jurisdiction, as precedent indicates that transfer orders are not final and appealable under 28 U.S.C. § 1291. *Carteret Sav. Bank v. Shushan*, 919 F.2d 225, 228–30 (3d Cir.1990). However, much has happened since then, the most significant event being the dismissal of the transferred ancillary case. It is, of course, well established that "a premature appeal taken from an order which is *not final* but which is followed by an order that *is final* may be regarded as an appeal from the final order in the absence of a showing of prejudice to the other party." *Richerson v. Jones*, 551 F.2d 918, 922 (3d Cir.1977) (emphasis in original); *see also Batoff v. State Farm Ins. Co.*, 977 F.2d 848, 851 n. 5 (3d Cir.1992); *Cape May Greene, Inc. v. Warren*, 698 F.2d 179, 185 (3d Cir.1983). Consequently, as the dismissal order is a final order, we have jurisdiction over the appeal from the transfer order under 28 U.S.C. § 1291.[3] We have jurisdiction pursuant to 28 U.S.C. § 1651 to consider the petition for a writ of mandamus.

## IV.   DISCUSSION

### A.   *The Rule 1014(b) Transfer Motion*

Ordinarily we would review the district court's findings of fact underlying the transfer motion under the clearly erroneous standard and we would exercise plenary review over its interpretation and application of

---

**3.** In his memorandum in support of his petition for mandamus, Aranha argues that we should issue the writ to protect our jurisdiction over the appeal because section 305(c), 11 U.S.C. § 305(c), precludes us from reviewing the dismissal order and the dismissal would make it impossible for us to review the transfer order. Of course, the dismissal order, rather than divesting us from jurisdiction to review the transfer order, actually provided us with such jurisdiction.

The appellees viewed the dismissal order in the same way as Aranha, as they have asked us to dismiss the appeal as moot in light of it, their theory being that there is nothing to transfer back to New York. We reject this contention. In *In re Swedeland Dev. Group, Inc.*, 16 F.3d 552, 560 (3d Cir.1994) (in banc), we held that an appeal is not moot if "a court can fashion 'some form of meaningful relief,' even if it only partially

Rule 1014(b). *See In re C.S. Assocs.*, 29 F.3d 903, 905 (3d Cir.1994). In this case, however, we are exercising plenary review as the issues involved essentially are legal rather than factual.

As we stated, the district court transferred the ancillary case from the New York bankruptcy court to the New Jersey bankruptcy court pursuant to Bankruptcy Rule 1014(b) and 28 U.S.C. § 1412. Bankruptcy Rule 1014(b) provides:

**(b) Procedure when petitions involving the same debtor or related debtors are filed in different courts**

If petitions commencing cases under the Code are filed in different districts by or against (1) the same debtor, or (2) a partnership and one or more of its general partners, or (3) two or more general partners, or (4) a debtor and an affiliate, on motion filed in the district in which the petition filed first is pending and after hearing on notice to the petitioners, the United States trustee, and other entities as directed by the court, the court may determine, in the interest of justice or for the convenience of the parties, the district or districts in which the case or cases should proceed. Except as otherwise ordered by the court in the district in which the petition filed first is pending, the proceedings on the other petitions shall be stayed by the courts in which they have been filed until the determination is made.

Section 1412 provides:

A district court may transfer a case or proceeding under title 11 to a district court

---

redresses the grievances of the prevailing party." (Citing *Church of Scientology v. United States*, —— U.S. ——, ——, 113 S.Ct. 447, 450, 121 L.Ed.2d 313 (1992)). Here, we clearly could grant Aranha meaningful relief if we reversed, for in that event we effectively would be divesting the New Jersey bankruptcy court of jurisdiction *ab initio*. *Cf. Carr v. American Red Cross*, 17 F.3d 671, 682–84 (3d Cir.1994) (where dismissal as to one defendant triggered a remand, court of appeals will review both dismissal and remand orders even though remand order in itself would not be appealable; reversal of dismissal order required that remand order be vacated). The result of such a reversal would be that the dismissal order would be voided because a reversal of the transfer order would destroy the jurisdictional basis for the dismissal order. It follows then that the appeal is not moot.

for another district, in the interest of justice or for the convenience of the parties.

The district court predicated its ruling on the finding that FIL is an "affiliate" of Emerson because one corporation, Centralinvest, S.A., directly or indirectly held 20% or more of each of FIL and Emerson. *In re Emerson Radio Corp.*, 173 B.R. at 493. The district court also found that Emerson still was a "debtor" within Rule 1014(b) even though the New Jersey bankruptcy court had confirmed a plan for its reorganization. 173 B.R. at 494. Finally, the court decided that it was in the interest of justice to transfer the case to the New Jersey bankruptcy court because FIL "has been pivotal to Emerson's reorganization," the ancillary case will determine the ownership of a large number of Emerson shares (and therefore control of Emerson), and the New Jersey bankruptcy court "is most, indeed intimately, familiar with the history" of Emerson's reorganization. *Id.* at 495.

On appeal, Aranha does not challenge the district court's finding that FIL is an "affiliate" of Emerson. We nevertheless note that the district court's conclusion, derived from its straightforward application of the definition of "affiliate" offered by 11 U.S.C. § 101(2)(B), is well supported by the record.

■ Aranha does argue as follows: a bankruptcy proceeding ends upon confirmation of the reorganization plan or when the plan is consummated;[4] the New Jersey bankruptcy court confirmed the Emerson plan on March 31, 1994, most of the plan was consummated in April 1994, and he did not initiate the ancillary case until June 1, 1994. Consequently, in Aranha's view, Emerson was no longer a "debtor" at the time of the transfer order and thus Rule 1014(b) was not applicable.

Aranha also cites various bankruptcy court cases for the proposition that substantial consummation of the reorganization plan effectively closes the debtor's estate and creates a new entity. None of the cases is persuasive as none addressed the issue before us.[5] Instead, we follow the plain language of 11 U.S.C. § 350, which provides that "[a]fter an estate is fully administered and the court has discharged the trustee, the court shall close the case." Thus, as the case is still open, Emerson is a debtor within Rule 1014(b) and the case is still "pending" within the rule. It therefore follows that the transfer motion could be made in the District of New Jersey. *See, e.g., In re Wilson,* 154 B.R. 769, 771 n. 3 (Bankr.M.D.Ala.1993) (case is "pending" within Rule 1014(b) "until the final decree enters and the case is closed").

We do not ignore Aranha's argument that an order closing the bankruptcy case is ministerial and that "the scheme of Chapter 11 is premised upon the corporate and economic realities of reorganization, not upon the me-

4. Aranha relies heavily on a case dealing with the perfection of security interests in the property of a debtor going through bankruptcy, *General Elec. Credit Corp. v. Nardulli & Sons, Inc.,* 836 F.2d 184 (3d Cir.1988). *General Electric* did indicate that "[i]nsolvency proceedings terminate upon confirmation of a plan of reorganization, or on the effective date or consummation date of the plan, if provided for in the plan." *Id.* at 190 (citing 11 U.S.C. § 1141(a)). But that statement was made in the context of a consideration of filing requirements under the Pennsylvania version of the Uniform Commercial Code. Thus, we were concerned with the purpose of the filing requirements, which is "to put a credit-searcher on notice of the possible existence of a lien and indicate where to obtain further information," *id.* at 190 (citations omitted). Our approach in *General Electric* sensibly allows for the creation of orderly records that properly reflect the security interests in the reorganized debtor's property, thereby encouraging future creditors to deal with a reorganized debtor. These considerations are completely inapposite here as Rule 1014(b) deals with the quite different concern that estates be orderly administered.

5. In fact, Aranha cites one case supporting our holding. In *In re Finley, Kumble, Wagner, Heine, Underberg, Manley, Myerson & Casey,* 149 B.R. 365 (Bankr.S.D.N.Y.1993), the bankruptcy court in which the Chapter 11 case involving a law firm was filed considered a Rule 1014(b) motion to transfer a later Chapter 7 case of one of the firm's partners to it from another district. Although a plan already had been confirmed in the Chapter 11 case, the court did not hold that this fact prevented it from exercising its authority under Rule 1014(b). *Id.* at 369. Instead, the court denied the motion on the substantive basis that it would not be in the interest of justice to transfer the Chapter 7 case. *Id.* at 369–70.

chanics of the clerk's office." [6] Appellant br. at 14–15. Whatever the abstract merit of this argument, it would not be a basis for departing from the plain language of section 350 and Rule 1014(b). Courts and parties in a bankruptcy proceeding should know with a fair degree of certainty the court which can entertain an application. Applying Rule 1014(b) and section 350 as written supplies that certainty. Thus, we reiterate that a bankruptcy case is pending under Rule 1014(b) unless it has been closed under 11 U.S.C. § 350.[7]

■ Aranha also argues that Rule 1014(b) does not apply to cases filed under section 304 because 28 U.S.C. § 1410 does not designate the court in which a Title 11 case for an affiliate of the foreign debtor is pending as one of the possible venues for an ancillary case. The gist of this argument is that an ancillary case may not be transferred to a venue in which it could not have been initiated.

The problem with this argument is that neither 28 U.S.C. § 1412 nor Rule 1014(b) includes a limitation that a case may be transferred only to a district in which it could have been brought.[8] As the Jurick Group and Emerson accurately note, the absence of such a restriction is particularly significant given that 28 U.S.C. § 1404(a) provides that a district court may transfer "any civil action" "[f]or the convenience of the parties and witnesses, in the interest of justice ... to any other district or division where it might have been brought." Both Rule 1014(b) and section 1412 largely include the

same criteria for transfer of cases as section 1404(a), i.e., "the interest of justice" or "the convenience of the parties," yet they do not include the limitation that a transfer may be made only to a district where the action might have been brought. These omissions must have been intentional.[9]

In sum, we find that the district court correctly interpreted Rule 1014(b) in holding that it had the power to transfer the ancillary case to the District of New Jersey. Hence, we will affirm the transfer order.

### B. Petition for a Writ of Mandamus

■ Although the dismissal order permits us to exercise jurisdiction over Aranha's appeal from the transfer order, Aranha petitioned for a writ of mandamus directing the New Jersey bankruptcy court to withdraw its order dismissing the ancillary case under section 305(a) of the Code. We deny the petition.

In this regard, we initially point out that where relief may be obtained through an ordinary appeal, a writ of mandamus is not warranted. *Bankers Life & Casualty Co. v. Holland,* 346 U.S. 379, 383, 74 S.Ct. 145, 148, 98 L.Ed. 106 (1953) (citing *Ex parte Fahey,* 332 U.S. 258, 259–60, 67 S.Ct. 1558, 1559, 91 L.Ed. 2041 (1947)); *In re School Asbestos Litigation,* 977 F.2d 764, 772 (3d Cir.1992); *Oracare DPO, Inc. v. Merin,* 972 F.2d 519, 522 (3d Cir.1992). Thus, we have stated that "mandamus must not be used as a mere substitute for appeal." *Westinghouse Elec.*

---

**6.** Aranha also places much faith in the fact that Emerson's reorganization plan referred to the newly-evolved Emerson as something other than "debtor." Obviously, the choice of terms settled upon by the drafters of the reorganization plan cannot be dispositive of the statutory issue before us.

**7.** Our result is consistent with the practical reality that in most cases the bankruptcy court still has jurisdiction over the case and oversees implementation of the plan. *See* 11 U.S.C. § 1142. Moreover, the bankruptcy court in limited circumstances may revoke an order of confirmation. *See* 11 U.S.C. § 1144.

**8.** Although 28 U.S.C. § 1412, in and of itself, may not provide the authority for a district court

to transfer to itself a case pending in another court, *see, e.g., A.H. Robins Co. v. Piccinin,* 788 F.2d 994, 1011 (4th Cir.), *cert. denied,* 479 U.S. 876, 107 S.Ct. 251, 93 L.Ed.2d 177 (1986), Rule 1014(b) provides *precisely* such authority.

**9.** Aranha also argues that an ancillary case is unlike a normal bankruptcy case. While this observation is accurate, it does not establish anything, as an ancillary case is a case "under the Code," and thus is subject to Rule 1014(b). *Cf. Phar–Mor, Inc. v. Coopers & Lybrand,* 22 F.3d 1228 (3d Cir.1994) (holding accountant negligence and/or malpractice action in federal district court and "related to" bankruptcy case, is a "case under this chapter" within the meaning of 11 U.S.C. § 1109(b); thus allowing creditors' committee to intervene in such action).

*Corp. v. Republic of Philippines,* 951 F.2d 1414, 1422 (3d Cir.1991).

The foregoing principle requires that we deny the petition for mandamus. The bankruptcy court entered the dismissal order pursuant to section 305(a) which allows a court in certain circumstances to dismiss a case after notice and a hearing. Section 305(c) states that "[a]n order under subsection (a) of this section dismissing a case ... is not reviewable by appeal or otherwise by the court of appeals ... or by the Supreme Court...." However, a section 305(a) order entered by a bankruptcy court is reviewable by the district court. *In re Goerg,* 930 F.2d 1563, 1565–66 (11th Cir.1991); *In re Axona Int'l Credit & Commerce Lt'd,* 924 F.2d 31, 35 (2d Cir.1991). Indeed, Aranha is prosecuting an appeal to the district court from the dismissal order. Therefore, Aranha has an adequate means other than through a writ of mandamus from this court to seek a review of the dismissal order. Consequently, we will not issue the writ. In these circumstances, we need not consider whether section 305(c) in itself bars us from issuing the writ.[10]

## V.  CONCLUSION

For the foregoing reasons, we will affirm the district court's order of September 15, 1994, transferring the ancillary case to the New Jersey bankruptcy court and will deny Aranha's petition for a writ of mandamus.

---

10. Conceivably, notwithstanding its broad language, section 305(c) would not bar a court of appeals from reviewing a section 305(a) dismissal order, if the review is necessary to preserve the court's jurisdiction to review orders not mentioned in section 305(a). *See Carr v. American Red Cross,* 17 F.3d 671 (3d Cir.1994), cited in note 3, *supra.*