**In re PAN AM CORPORATION, et al., Debtors.**

**TACA INTERNATIONAL AIRLINES, S.A., Plaintiff,**

v.

**PAN AM WORLD AIRWAYS, INC., Defendant.**

**Bankruptcy Nos. 91 B 10080 (CB) to 91 B 10087 (CB). Adv. No. 94–1027–BKC–AJC.**

United States Bankruptcy Court, S.D. Florida.

Jan. 10, 1995.

Francis L. Carter, Coll Davidson Carter Smith Salter & Barkett, P.A., Miami, FL, for Pan American World Airways, Inc.

James P.S. Leshaw, Greenberg Traurig Hoffman Lipoff Rosen & Quentel, P.A., Miami, FL, for Taca Intern. Airlines, S.A.

James L. Bromley, Cleary, Gottlieb, Steen & Hamilton, New York City, for Pan Am Corp., et al.

## MEMORANDUM DECISION AND ORDER DENYING PAN AM'S MOTION FOR TRANSFER OF VENUE

A. JAY CRISTOL, Chief Judge.

This matter came before the Court for hearing on December 12, 1994 at 2:30 p.m. on the Motion of Pan Am World Airways, Inc. to transfer this adversary proceeding to the United States Bankruptcy Court for the Southern District of New York. For the reasons set forth below, the Motion is DENIED.

This Memorandum Decision and Order resolves in favor of Plaintiff, Taca International Airlines, S.A. ("Taca"), the issues of whether (i) proper venue for the above-captioned adversary proceeding lies in this District, and (ii) the proceeding should be transferred to the United States Bankruptcy Court for the Southern District of New York in the interest of justice and for the convenience of the parties. The Court finds and determines that this District is a proper venue for this adversary proceeding pursuant to 28 U.S.C. § 1409(e) and that Defendant, Pan American World Airways, Inc. ("Pan Am"), has not met its burden of showing that the interest of justice and the convenience of the parties require transfer to another District.

## I. STATEMENT OF FACTS

### Procedural Background

Pan Am, formerly one of the world's largest air carriers, filed a voluntary Chapter 11 petition in the United States Bankruptcy Court for the Southern District of New York on January 8, 1991. Pan Am continued to operate its business as a debtor in possession until it closed its operations and began to liquidate its assets for the benefit of its creditors approximately one year later. Although Pan Am is currently in the process of liquidating its assets under the supervision of the bankruptcy court in the Southern District of New York, it remains in possession of its assets and in management of its affairs pursuant to Sections 1107 and 1108 of the Bankruptcy Code.

On October 21, 1994, Taca, the national air carrier of the Republic of El Salvador, filed the complaint commencing this adversary proceeding (the "Complaint") in this District by which Taca seeks (i) a declaratory judgment that it has the right to recoup certain funds against its post-bankruptcy obligations to Pan Am, in accordance with the terms of a multilateral interline passenger traffic agreement (the "Passenger Agreement") and applicable non-bankruptcy law, and (ii) a money judgment against Pan Am for the post-bankruptcy breach of a multilateral interline cargo traffic agreement (the "Cargo Agreement").

Taca commenced this proceeding in this District pursuant to 28 U.S.C. § 1409(e), which provides that an adversary proceeding arising out of the debtor's post-bankruptcy operation of its business may be commenced in the United States District Court for the district in which the State or Federal court

sits where the party commencing the proceeding could have brought the proceeding under applicable non-bankruptcy venue provisions.

Shortly after the filing of Taca's Complaint, Pan Am filed its Motion for Transfer of Venue (the "Venue Motion"), by which it seeks a transfer of this adversary proceeding to the United States Bankruptcy for the Southern District of New York. The Venue Motion contends that (i) 28 U.S.C. § 1409(e) is inapplicable in this proceeding, and (ii) the interest of justice and the convenience of the parties require a transfer of the proceeding to the Southern District of New York pursuant to 28 U.S.C. § 1412.

### The Interline Agreements

Pursuant to the Passenger and Cargo Agreements, Taca and Pan Am were able to sell passenger tickets and cargo services covering their respective routes between the United States and El Salvador. In other words, the Agreements made it possible for both Pan Am and Taca to sell a single ticket to a customer covering routes which were not serviced in their entirety by either carrier alone.

Although Taca and Pan Am entered into the Agreements well before Pan Am's bankruptcy filing, both continued to conduct business pursuant to the Agreements after Pan Am's bankruptcy filing. The debts to Pan Am that Taca seeks to recoup arose out of post-bankruptcy business operations between Pan Am and Taca.

### DECISION

### I. Venue is Proper in this District

Section 1409(e) of the Judicial Code, 28 U.S.C. § 1409(e), provides that an adversary proceeding arising out of the debtor's post-bankruptcy operation of its business may be commenced in the United States District Court for the district where the *State* or Federal court sits in which the party commencing the proceeding could have brought the case under applicable non-bankruptcy venue provisions:

> A proceeding arising under Chapter 11 or arising in or related to a case under title 11, based on a claim arising after the commencement of such case from the operation of the business of the debtor, may be commenced ... *in the district court for the district where the State or Federal court sits in which the party commencing such proceeding may, under applicable non-bankruptcy venue provisions, have brought an action on such claim*, or in the district court in which such case is pending.

28 U.S.C. § 1409(e) (emphasis added).[1] Because Taca could have brought this action in Florida state court, and because the causes of action alleged in the Complaint arose out of the post-bankruptcy operation of Pan Am's business, the Court finds and determines that this District is a proper venue for this action pursuant to Section 1409(e).

 Pan Am would have been subject to the personal jurisdiction of the Florida Court. *See* § 48.193, Fla.Stat. Furthermore, the Complaint alleges that Counts I and II arose out of events which transpired almost exclusively in Miami, Florida. Accordingly, venue would have been proper in the Circuit Court of the Eleventh Judicial Circuit, the State judicial district which encompasses Dade County, Florida, part of the Southern District of Florida. *See* § 47.011, Fla.Stat. Finally, the subject matter of the Complaint falls within the general jurisdiction of the Circuit Court. *See* § 26.012, Fla.

---

1. Pan Am urges the Court to follow the "general rule" for venue embodied in 28 U.S.C. § 1409(a), that litigation be concentrated in the court where a debtor's bankruptcy case is pending. In making this argument, Pan Am seeks to read Section 1409(e) out of the Judiciary Code. By enacting Section 1409(c), Congress intended to subject debtors in Judiciary Code. By enacting Section 1409(e), Congress intended to subject debtors in possession who continue to operate their businesses post-bankruptcy to the same rules as non-debtors, including with respect to venue. *See Luciano v. Maggio (In re Capital Resources Corp.)*, 139 B.R. 572 (E.D.N.Y.1992) (*citing In re Allegheny*, 74 B.R. 397, 400 (Bankr.W.D.Pa.1987)) (Section 1409(e) is intended to return debtors in possession to the "mainstream of ordinary citizenry").

Stat. Accordingly, but for the filing of Pan Am's bankruptcy petition, Taca could have commenced this action in Florida state court.

Taca has further satisfied Section 1409(e) in that the Complaint raises causes of action which arose out of Pan Am's business operations after the commencement of Pan Am's bankruptcy case.[2] Count I of the Complaint seeks a declaratory judgment that Taca has a right of recoupment against certain amounts that Taca allegedly owes to Pan Am. By definition, a right to recoupment cannot arise until there is money owing by both parties to a transaction. *See, e.g. In re Coin Phones, Inc.,* 153 B.R. 135, 143 (Bankr.S.D.N.Y.1993) (claim for recoupment could arise only upon debt of party seeking recoupment). Pan Am contends that the money owed by Taca is due and owing on account of services provided by Pan Am *after* the commencement of Pan Am's bankruptcy case. *See* Complaint, ¶ 20. Accordingly, Taca's right to recoup arose upon the rendition of services by Pan Am, which was after the commencement of the Pan Am Chapter 11 case.

At oral argument, Pan Am cited two cases for the proposition that because the Passenger and Cargo Agreements were entered into prior to bankruptcy, any cause of action relating to those Agreements necessarily arose pre-bankruptcy: *In re Nutri/System, Inc.,* 159 B.R. 725 (E.D.Pa.1993) and *In re Eagle–Picher Industries, Inc.,* 162 B.R. 140 (Bankr.S.D.Ohio 1993). Both of these cases are distinguishable from the present case. Although the district court decision in *Nutri/System* in unclear on this point, it is clear from the bankruptcy court decision that despite the allegations of a post-petition breach of a pre-petition contract, each of the acts that gave rise to that breach occurred *pre-petition.* 1993 Bankr. LEXIS 1343. In contrast, the services which gave rise to the right of recoupment in this case were rendered by Pan Am post-petition.

In *Eagle–Picher,* the bankruptcy court concluded that a dispute regarding the debtor tenant's obligations upon assumption of a pre-petition lease pursuant to Section 365 of the Bankruptcy Code did not arise "from the operation of the business of the debtor," as required by 28 U.S.C. § 1409(d), but was a "matter concerning the administration of the estate." 162 B.R. at 142–43. In contrast, the recoupment right that is the subject of Count I of the Complaint is alleged to have arisen from the provision of *post-petition* services by Pan Am. Accordingly, Count I of the Complaint arises out of Pan Am's post-bankruptcy operations.

■ For the foregoing reasons, the Court finds that venue is proper in this District because Taca has brought this proceeding in the district where "*the State* or Federal court sits in which the party commencing such proceeding may, under applicable nonbankruptcy venue provisions, have brought an action on such claim ..." and because both Counts I and II of the Complaint arose after the commencement of the "case from the operation of [Pan Am's] business." 28 U.S.C. § 1409(e).[3]

## II. Pan Am Has Failed to Meet Its Burden of Demonstrating That The Interest of Justice and the Convenience of the Parties Require Transfer of this Proceeding

By way of its Venue Motion, Pan Am also seeks to transfer this adversary proceeding

---

**2.** Pan Am conceded at oral argument that Count II of the Complaint, which is a claim for a money judgment owing on account of a post-petition breach of the Cargo Agreement, arose post-petition. Transcript of December 12 hearing at 5.

**3.** Counts I and II of the Complaint arise out of a common nucleus of operative fact, involve similar accounting procedures, and their joint determination would further the goals of judicial economy, convenience and avoidance of piecemeal litigation. Accordingly, as Pan Am concedes that venue is proper in this District as to Count II of the Complaint, venue for the entire adversary proceeding is proper in this District under the theory of pendent venue. *See, e.g.,*

*Beattie v. United States,* 756 F.2d 91 (D.C.Cir. 1984) (court exercised pendent venue over improperly venued counts because of common identity of parties and proof); *Reuber v. U.S.,* 750 F.2d 1039 (D.C.Cir.1984) (court applied pendent venue theory because of existence of common facts, common issues of proof and common witnesses demonstrating nexus between various counts), *cert. den.* 501 U.S. 1212, 111 S.Ct. 2814, 115 L.Ed.2d 986 (1991); *Jackson v. MCI Telecommunications Corp.,* 1993 WL 408332 (D.Kan. 1993) (court heard plaintiff's claims under pendent venue theory after considering relatedness of claims, effect on judicial economy, convenience of the parties, and identity of damages); *Dooley v. United Technologies Corp.,* 786 F.Supp.

to the Southern District of New York on the basis that the interest of justice and the convenience of the parties so require. Pan Am has failed to meet its burden on either of these issues.

■ It is beyond refute that the party moving for a transfer of venue pursuant to 28 U.S.C. § 1412 must show by a preponderance of the evidence that such a transfer is in the best interest of justice and for the convenience of the parties. *In re Manville Forest Products Corp.,* 896 F.2d 1384 (2d Cir.1990). *See also In re Ricoh Corp.,* 870 F.2d 570 (11th Cir.1989) (burden is on movant to show the suggested forum is more convenient); *In re Global Underwriting Management, Inc.,* 147 B.R. 601 (Bankr.S.D.Fla.1992) (Cristol, C.J.) (same).

■ Pan Am has failed to demonstrate that any of the factors considered by the Court require a transfer of this adversary proceeding in the interest of justice and for the convenience of the parties. It must be noted that it is not sufficient for Pan Am to show that Miami is less convenient to *it* than New York. Rather, the party requesting the transfer of venue must demonstrate by a preponderance of the evidence that in light of all of the factors to be considered, it will be more convenient for both parties and will further the interest of justice. Absent such a showing, this Court will not disturb the choice of forum made by Taca as plaintiff, which choice should be accorded great deference. *See Ricoh Corp.,* 870 F.2d at 573 (*citing Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 508, 67 S.Ct. 839, 843, 91 L.Ed. 1055 (1947)) (federal courts give deference to plaintiff's choice of forum).

In *Global Underwriting,* this Court set forth the following six factors to be consid-

ered in "applying the twin tests of 'convenience of the parties' and 'the interest of justice:' "

1. Relative ease of access to sources of proof.

2. Availability of compulsory process for attendance of unwilling witnesses, and the cost of obtaining those witnesses' attendance.

3. Enforceability of a judgment if one is obtained.

4. Relative advantages and obstacles to fair trial.

5. Local interest in having local controversies decided at home.

6. Trial in the state the law of which will govern the action.

147 B.R. at 604. This Court will analyze each of the foregoing factors and will exercise its discretion to transfer a proceeding cautiously. *Id.*

*Access to Proof.* The first factor—the relative ease of access to sources of proof—falls clearly in Taca's favor. Both the Taca personnel who are familiar with this matter and are likely to be trial witnesses, and Taca's documents are located in Taca's Miami and San Salvador offices, while Pan Am's relevant personnel and documents are located in the New York metropolitan area.[4] In addition to the obvious convenience of venue in this District for Taca's Miami-based personnel, to the extent Taca personnel located in San Salvador are required to travel in connection with this litigation, they can take a direct flight from San Salvador to Miami, lasting approximately two and one-half hours. In contrast, each flight from San Salvador to New York makes stops in Guatemala City *and* Washington, D.C. before

65 (D.D.C.1992) (court exercised pendent venue over all of plaintiff's claims after finding they arose out of same common nucleus of facts); *Christian Dalloz, S.A. v. Holden,* 1990 WL 121342 (E.D.Pa.1990) (pendent venue applied when parties and proof are identical, which factors were evidence of common nucleus of operative fact); *Rodriguez v. Chandler,* 641 F.Supp. 1292 (S.D.N.Y.1986) (pendent venue may be ex-

ercised when the claims are factually interrelated), *aff'd* 841 F.2d 1117 (2d Cir.1988).

4. Taca is headquartered in the City of San Salvador in the Republic of El Salvador. Additionally, Taca has administrative offices in Miami. Pan Am is headquartered in the New York City Metropolitan area.

finally landing in New York's John F. Kennedy Airport at approximately 11:00 p.m., seven and one-half hours after departure. In contrast to the heavy burden that would be placed on Taca's San Salvador-based personnel, the inconvenience to Pan Am of having its New York witnesses attend hearings in Miami is minimal in that travel between Miami and New York takes approximately two and one-half hours and can be accomplished on any of multiple daily flights on numerous airlines. The "balance of inconvenience" therefore weighs heavily in Taca's favor.

*Availability of Compulsory Process.* The availability of compulsory process in this proceeding is irrelevant. Due to the nature of this proceeding which involves the interpretation of business records, it is a virtual certainty that the witnesses to be called by both Pan Am and Taca are party-witnesses who can be compelled to attend a hearing or trial, regardless of its location. This factor is accordingly "neutral" and, therefore, dictates against transfer of this adversary proceeding.[5]

*Enforceability of Judgment.* The type of judgment which Taca seeks by way of Count I of the Complaint is an equitable judgment which will be equally binding on the parties whether made by a bankruptcy court sitting in Miami or New York City. Count II of the Complaint, which seeks a money judgment, will also be equally valid and enforceable regardless of whether it issues from a New York or Miami based bankruptcy court. Accordingly, this factor is also neutral and, therefore, dictates against transfer of this adversary proceeding.

*Fair Trial.* Although Pan Am has alleged in the Venue Motion that the New York bankruptcy court is more likely to provide the parties a fair trial, it has failed to demonstrate why this is so. Additionally, Pan Am has conceded that *"[t]he substance of the present dispute between Taca and Pan Am is nothing more than a matter of mundane accounting."* Venue Motion at ¶ 12 (empha-

sis added). Accordingly, the familiarity of the New York court with Pan Am's bankruptcy case is immaterial in that this Court is quite capable of dealing with the issues raised by Taca's Complaint. This is particularly so in that the allegations raised in the Complaint are factual in nature and there has been no evidence demonstrating that the New York bankruptcy court is at all familiar with these facts.

*Local Interest.* Not only did Pan Am have extensive business contacts with the State of Florida, but the acts that gave rise to the causes of action alleged in the Complaint arose almost entirely in this District. The Complaint alleges that more than ninety percent of the interline connections and substantially all of the cargo transactions between Taca and Pan Am that are the subject of the Complaint were made at Miami International Airport in Miami, Florida. As such, it is this jurisdiction which has the greatest interest in the outcome of this litigation.

*State Law.* The dispute between Pan Am and Taca arises under the Passenger and Cargo Agreements. Both Taca and Pan Am agree that neither Agreement contains a choice of law provision. Because the acts which gave rise to the causes of action alleged in the Complaint occurred almost exclusively within the State of Florida, it is most likely that Florida's laws will provide the rule of decision. This Court and attorneys admitted to practice before this Court are certainly as well-equipped to apply the laws of Florida as the New York bankruptcy court and the attorneys admitted to practice before it.

In addition to the six factors enumerated by this Court in *Global Underwriting*, the Court will consider any additional factors that may be relevant to the convenience of the parties and the interest of justice. In its Venue Motion Pan Am argues that transfer of this adversary proceeding to the Southern District of New York is justified because the Pan Am estate will incur additional attor-

---

5. Because of the deference given to the plaintiff's choice of forum, to the extent a given factor is . neutral, it should weigh *against* transfer of the adversary proceeding.

neys' fees and expenses if forced to litigate in this District. Venue Motion at ¶ 12. The Court rejects this argument. Pan Am has retained competent counsel in this District, who are well known to this Court. Pan Am's cost of litigating in New York is likely to exceed the cost of litigating in Miami. Additionally, Taca's lawyers who are familiar with this matter are located in Miami, and Taca's costs and attorneys' fees are likely to be significantly less if this matter is litigated in Miami rather than in New York City.

In light of each of the foregoing factors which either mitigate against the transfer of this adversary proceeding to the Southern District of New York or are neutral, this Court finds and determines that the interest of justice and convenience of the parties do not require the transfer of this adversary proceeding. Accordingly, it is

ORDERED AND ADJUDGED that the Venue Motion be and hereby is DENIED in its entirety.

DONE AND ORDERED.