## KRYSTAL CADILLAC–OLDSMOBILE–GMC TRUCK, INC.,

v.

## GENERAL MOTORS CORPORATION and General Motors Acceptance Corp.

### CIV.A. No. 98–CV–5119.

United States District Court,
E.D. Pennsylvania,
Philadelphia Division.

March 25, 1999.

Gerard J. Jackson, Cherry Hill, NJ, for Plaintiff.

James A. Mollica, Jr., Timothy Murray, Mollica and Murray, Pittsburgh, PA, for Defendants.

## MEMORANDUM AND ORDER

JOYNER, District Judge.

Now pending before this Court are the Defendants' Motions to Dismiss the Plaintiff's Amended Complaint and to Transfer this Case to the United States District Court for the Middle District of Pennsylvania. For the reasons which follow, we shall grant the defendants' motion to transfer and shall leave the motion to dismiss the amended complaint to the Middle District for decision.

### History of the Case

Beginning in November, 1990, Plaintiff, Krystal Cadillac–Oldsmobile GMC Truck, Inc., operated an automobile/truck dealership in Gettysburg, Pennsylvania pursuant to a written franchise agreement with the General Motors Corporation. Under that franchise agreement, which was to remain in effect at least until October 31, 1995 so long as Plaintiff fulfilled its obligations

thereunder, Krystal Cadillac was required to have and maintain a separate line of credit from a financial institution to finance its purchase of new vehicles.

According to the Amended Complaint, in October, 1991, defendant GMAC, the financing arm of General Motors which had been providing plaintiff's financing, unilaterally terminated the line of credit upon which plaintiff had been relying to purchase its new vehicle inventory from GM. While plaintiff was trying to secure a substitute line of credit, however, it received a letter from General Motors dated March 6, 1992 that it considered plaintiff to have breached the franchise agreement and that if the situation were not corrected or explained to GM's satisfaction within thirty days, then GM and its divisions could terminate the Dealer Agreements. Plaintiff contends, however, that it was unable to secure alternative financing because potential lenders were under the perception that the franchise was either canceled or on the verge of cancellation. Thereafter, on May 13, 1993, GM notified plaintiff that the Dealer Franchise would terminate in sixty days or on July 13, 1993. This termination date was later extended to August 12, 1993. One day prior thereto, plaintiff filed an appeal of the termination to the Pennsylvania Board of Vehicle Manufacturers, Dealers and Salespersons (the "Vehicle Board") under the Pennsylvania Board of Vehicles Act, 63 P.S. § 818.1, et seq. The Vehicle Board held a hearing on August 2, 1994 but before it issued its decision upholding the termination, on September 8, 1994, Krystal Cadillac filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Middle District of Pennsylvania.

Among the central issues before the Bankruptcy Court and subsequently on appeal before the U.S. District Court for the Middle District of Pennsylvania and the U.S. Court of Appeals for the Third Circuit, was whether the dealer franchise was an asset of the bankrupt debtor's estate and thus subject to sale to satisfy the claims of plaintiff's creditors. Both the July 26, 1995 decision of the Bankruptcy Court and the February 3, 1997 decision of the U.S. District Court for the Middle District held that as the Vehicle Board and the Pennsylvania Commonwealth Court had found that termination of the franchise was proper and occurred prior to the filing of the bankruptcy petition, the franchise could not be an asset of Krystal's bankruptcy estate. The Third Circuit Court of Appeals, however, reversed and in its opinion of April 23, 1998, held that the franchise was an asset of the estate and that General Motors' actions in trying to enforce the state courts' termination of the franchise agreement violated the automatic stay provision set forth in § 362(a) of the Bankruptcy Code, 11 U.S.C. § 362(a)(3).

Plaintiff then commenced this lawsuit on September 25, 1998 against GM and GMAC seeking to recover compensatory, actual, punitive and general damages for violation of the automatic stay provision, breach of contract, violations of the Automobile Dealers' Day in Court Act, 15 U.S.C. § 1221, et seq. and the Board of Motor Vehicles Act, 63 P.S. § 818, et seq. By way of the now-pending motions, Defendants seek to have this case dismissed pursuant to Fed.R.Civ.P. 12(b)(6) and/or transferred to the U.S. Bankruptcy Court for the Middle District of Pennsylvania.

### Discussion

Defendants contend that this case should be transferred to the United States Bankruptcy Court for the Middle District of Pennsylvania because the plaintiff dealership is located in that district and it is there that plaintiff filed its petition for voluntary bankruptcy under Chapter 11. Defendants further contend that this case is therefore a "core" matter within the bankruptcy court's jurisdiction.

It is axiomatic that jurisdiction over Title 11 matters lies with the district court, although the district courts routinely refer most bankruptcy cases to the bankruptcy

court. *In re Guild and Gallery Plus, Inc.,* 72 F.3d 1171, 1175 (3rd Cir.1996) citing *In re Marcus Hook Development Park, Inc.,* 943 F.2d 261, 264, n. 3 (3rd Cir.1991); 28 U.S.C. § 157(a). Potentially, the bankruptcy court has jurisdiction over four types of title 11 matters, pending referral from the district court: (1) cases under title 11, (2) proceedings arising under title 11, (3) proceedings arising in a case under title 11, and (4) proceedings related to a case under title 11. *Id.*

For a proceeding to arise under title 11, the relief sought must be based on a provision of title 11. *In re Colbert v. Anderson,* 117 B.R. 51, 53 (Bankr.D.Conn. 1990) citing, *inter alia, Wood v. Wood,* 825 F.2d 90, 97 (5th Cir.1987). For a proceeding to arise in a case under title 11, it must be one which would not exist but for the bankruptcy case. *Id.* On the other hand, a proceeding is related to bankruptcy if the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy. *Pacor, Inc. v. Higgins,* 743 F.2d 984, 994 (3rd Cir.1984); *In re Colbert, supra.* A key word in this test is "conceivable"—certainty, or even likelihood is not a requirement. *Marcus Hook,* 943 F.2d at 264. Thus, bankruptcy jurisdiction will exist so long as it is possible that a proceeding may impact on the debtor's rights, liabilities, options, or freedom of action or the handling and administration of the bankrupt estate. *Id.,* citing *In re Smith,* 866 F.2d 576, 580 (3rd Cir.1989). It should be noted that a bankruptcy case is considered to still be pending until such time as the estate has been fully administered, the court has discharged the trustee and closed the case. *In re Emerson Radio Corp.,* 52 F.3d 50, 54 (3rd Cir.1995); 11 U.S.C. § 350.

Whether a particular proceeding is core represents a question wholly separate from that of subject-matter jurisdiction. Under 28 U.S.C. § 157, a bankruptcy court might have jurisdiction over a proceeding, but still might not be able to enter final judgments and orders. *Marcus Hook,* 943 F.2d at 266. Indeed, under 28 U.S.C. § 157(b)(1), "[b]ankruptcy judges may hear and determine all cases under title 11 and all core proceedings arising under title 11, or arising in a case under title 11, referred under subsection (a) of this section and may enter appropriate orders and judgments, subject to review under section 158 of this title." Section 157(b)(2) sets forth a nonexhaustive listing of core proceedings, including "matters concerning the administration of the estate." 28 U.S.C. § 157(b)(2)(A).

In addition to the examples outlined in Section 157(b)(2)(A) through (O), our circuit precedents have further held that a proceeding is core if it invokes a substantive right provided by title 11 or if it is a proceeding that, by its nature, could arise only in the context of a bankruptcy case. *Guild and Gallery,* 72 F.3d at 1178; *Marcus Hook,* 943 F.2d at 267. Non-core proceedings include the broader universe of all proceedings that are not core proceedings but are nevertheless "related to" a bankruptcy case. *Halper v. Halper,* 164 F.3d 830, 837 (3rd Cir.1999). In other words, if the proceeding does not invoke a substantive right created by the federal bankruptcy law and is one that could exist outside of bankruptcy, it is not a core proceeding; it may be related to the bankruptcy because of its potential effect, but under section 157(c)(1), it is an "otherwise related" or non-core proceeding.

In adversary proceedings in which a bankruptcy court is presented with a mixture of core and non-core claims, the court is required to apply a claim-by-claim approach to determine the extent of its jurisdiction to hear each. *Halper,* 164 F.3d at 839–40. Thereafter and based upon this analysis, the court may either enter final judgment or submit proposed findings of fact and conclusions of law to the district court. *Id.*

In moving for transfer, Defendants invoke several statutes which govern

changes of venue both generally and with respect to bankruptcy and bankruptcy-related cases in particular. 28 U.S.C. § 1404 governing venue changes in general first provides, in pertinent part:

(a) For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

(b) Upon motion, consent or stipulation of all parties, any action, suit or proceeding of a civil nature, or any motion or hearing thereof, may be transferred, in the discretion of the court, from the division in which pending to any other division in the same district . . .

28 U.S.C. §§ 1408 and 1409, which dictate where venue in bankruptcy and bankruptcy-related cases lies, similarly provide in relevant part,

§ 1408. Venue of cases under title 11

Except as provided in section 1410 of this title,[governing venue of cases ancillary to foreign proceedings] a case under title 11 may be commenced in the district court for the district—

(1) in which the domicile, residence, principal place of business in the United States, or principal assets in the United States, of the person or entity that is the subject of such case have been located for the one hundred and eighty days immediately preceding such commencement, or for a longer portion of such one-hundred-and-eighty-day period than the domicile, residence, or principal place of business, in the United States, or principal assets in the United States, of such person were located in any other district; or

(2) in which there is pending a case under title 11 concerning such person's affiliate, general partner, or partnership.

§ 1409. Venue of proceedings arising under title 11 or arising in or related to cases under title 11

(a) Except as otherwise provided in subsections (b) and (d), a proceeding arising under title 11 or arising in or related to a case under title 11 may be commenced in the district court in which such case is pending . . .

Finally, 28 U.S.C. § 1412 likewise states:

"[a] district court may transfer a case or proceeding under title 11 to a district court for another district, in the interest of justice or for the convenience of the parties."

Section 1412 is complemented by Bankruptcy Rule 1014, subsection(b) of which also provides in relevant part:

If petitions commencing cases under the Code are filed in different districts by or against (1) the same debtor, or (2) a partnership and one or more of its general partners, or (3) two or more general partners, or (4) a debtor and an affiliate, on motion filed in the district in which the petition filed first is pending and after hearing on notice to the petitioners, the United States trustee, and other entities as directed by the court, the court may determine, in the interest of justice or for the convenience of the parties, the district or districts in which the case or cases should proceed. . . .

 The phrase "interest of justice" is not defined in § 1404, § 1412 or Rule 1014(b) and indeed courts have noted that it is "an elusive term not easily amenable to definition." *In the Matter of Emerson Radio Corp.*, 173 B.R. 490, 494–95 (D.N.J.1994), *aff'd*, 52 F.3d 50 (3rd Cir. 1995) quoting *In re Pinehaven Assocs.*, 132 B.R. 982, 990 (Bankr.E.D.N.Y.1991). In any event, a presumption has developed that civil proceedings should be tried in the "home" court, namely the court where the bankruptcy case itself is pending. *Bank of America v. Nickele*, 1998 WL 181827 (E.D.Pa.1998) at *5. Of course, the burden is on the party seeking to transfer venue to show by a preponderance of the evidence that venue is not proper or that

transfer is warranted because it would be in the interest of justice and for the convenience of the parties. *In re Peachtree Lane Associates, Ltd.,* 188 B.R. 815, 830 (N.D.Ill.1995); *In re Pan Am Corporation,* 177 B.R. 1014, 1018 (Bankr.S.D.Fla.1995), both citing *In re Manville Forest Products Corp.,* 896 F.2d 1384 (2nd Cir.1990). Absent such a showing, the court will not disturb the choice of forum made by plaintiff, as it should be accorded great deference. *In re Pan Am,* 177 B.R. at 1018. *See Also: In re Ricoh Corp.,* 870 F.2d 570 (11th Cir.1989). Although the decision to transfer venue of a case is ultimately committed to the discretion of the court, the following factors may be considered in applying the twin tests of convenience of the parties and the interest of justice:

1. Relative ease of access to sources of proof.

2. Availability of compulsory process for attendance of unwilling witnesses and the cost of obtaining those witnesses' attendance.

3. Enforceability of a judgment if one is obtained.

4. Relative advantages and obstacles to fair trial.

5. Local interest in having local controversies decided at home.

6. Trial in the state the law of which will govern the action.

7. The proximity of the debtor and creditors of every kind to the court.

8. The location of the assets.

9. The economic administration of the estate and the economic necessity for ancillary administration if liquidation should result.

*In re Pan Am, supra,* citing *Global Underwriting Management, Inc. v. Chatham Underwriting Management, Inc.,* 147 B.R. 601 (Bankr.S.D.Fla.1992); *Bank of America v. Nickele, supra.; In re Midland Associates,* 121 B.R. 459 (Bankr.E.D.Pa. 1990).

In application of all of the preceding principles, we note that the claims being pressed by the plaintiff here, who is the debtor in the bankruptcy proceedings, arise out of both pre-and post-bankruptcy petition conduct in that Count One seeks damages for GM and GMAC's alleged violation of the automatic stay, while Counts Two through Seven are premised upon defendants' alleged breach of contract, breach of the duty of good faith and fair dealing, tortious interference, conversion of the franchise, etc., which activities are averred to have taken place prior to the filing of the Chapter 11 petition. From this, we conclude that while the first count of the amended complaint is a core proceeding which also arises in a case under title 11 (given that this claim would not have arisen had it not been for the bankruptcy case), the remaining counts are non-core, but are related to the bankruptcy action. This is because any judgment inuring to the benefit of the debtor-plaintiff could conceivably affect the bankruptcy estate and the proceeds available for distribution to Krystal's creditors. *See, Bank of America v. Nickele, supra; In re Nutri/System, Inc.,* 159 B.R. 725 (E.D.Pa. 1993).

Having so found, we must next determine the appropriateness of transfer of this matter to the Middle District, where the bankruptcy proceedings are pending. As the plaintiff's own pleadings reflect, it has premised venue in this district on its distribution of advertising, customer solicitation and attendance and participation in GM-sponsored automobile auctions in Berks and Lancaster Counties, on its attendance at sales and corporate meetings in this district and its dealer-trades with other GM dealers located in this district. Plaintiff acknowledges that its place of business and *a fortiori,* its witnesses and business records are located in the Middle District and it cannot be disputed that Defendants' Michigan headquarters are closer to the Middle District Courthouse in Harrisburg than to the location of this Courthouse in Philadelphia. As a general proposition, where the plaintiff chooses a forum which is neither his

home nor the situs where any of the operative facts of the underlying action is based, his forum selection is entitled to less weight. *Eagle Traffic Control, Inc. v. James Julian, Inc.,* 933 F.Supp. 1251, 1259 (E.D.Pa.1996); *Schmidt v. Leader Dogs for the Blind, Inc.,* 544 F.Supp. 42, 47 (E.D.Pa.1982). That clearly being the case here and all of the other factors being equal, we can make no other finding but that transfer of this matter to the Middle District would clearly be in the interests of justice and more convenient for the parties.

Thus, inasmuch as transfer is warranted, it shall be accomplished in accordance with the attached Order.

## ORDER

AND NOW, this 25th day of March, 1999, upon consideration of Defendants' Motions to Transfer and to Dismiss the Plaintiff's Amended Complaint, it is hereby ORDERED that the Motion to Transfer is GRANTED for the reasons set forth in the preceding Memorandum Opinion and the Clerk of Court is DIRECTED to transfer this case, including Defendants' Motion to Dismiss the Plaintiff's Amended Complaint, to the United States District Court for the Middle District of Pennsylvania.