**In the Matter of William K. HOLMES, Debtor.**

**William K. Holmes; Holmes Capital, LLC; Brew Dog, LLC; Bimini Star, LLC; and EBH Investments Co., LLC, Plaintiffs,**

**v.**

**Jack B. Grubman and Salomon Smith Barney Inc., Defendants.**

**Bankruptcy No. 02–52793 RFH. Adversary No. 03–5208.**

United States Bankruptcy Court, M.D. Georgia, Macon Division.

Feb. 5, 2004.

Joseph J. Burton, Jr., Atlanta, GA, William Jemison Mims, Jr., David L. McGee, Pensacola, FL, for Plaintiffs.

Brett A. Rogers, C.B. Rogers, J. Timothy McDonald, Atlanta, GA, Joann Hendon, New York City, for Defendants.

### *MEMORANDUM OPINION*

ROBERT F. HERSHNER, JR., Chief Judge.

Jack B. Grubman and Salomon Smith Barney Inc., Defendants, filed on September 8, 2003, their Motion of Defendants to Transfer. William K. Holmes; Holmes Capital, LLC; Brew Dog, LLC; Bimini Star, LLC; and EBH Investments Co., LLC; Plaintiffs, filed a response on October 1, 2003. Defendants' motion came on for a hearing on October 29, 2003. The Court, having considered the record and the arguments of counsel, now publishes this memorandum opinion.

William K. Holmes filed a petition under Chapter 11 of the Bankruptcy Code on

July 1, 2002. Plaintiffs[1] filed this adversary proceeding on June 23, 2003. Plaintiffs filed an amended complaint on July 11, 2003. Defendants filed a motion to transfer this adversary proceeding to the United States District Court for the Southern District of New York. Defendants contend this adversary proceeding should be coordinated and consolidated with a pending class action known as *In re WorldCom. Inc. Securities Litigation*, 02 Civ. 3288(DLC) (S.D.N.Y.)[2] (hereafter the *Securities Litigation*). The Defendants in this adversary proceeding are also defendants in the *Securities Litigation*.[3] Plaintiffs oppose the transfer. The Judicial Panel on Multidistrict Litigation has transferred some one-hundred individual civil actions and class actions for coordinated or consolidated pretrial proceedings in the *Securities Litigation*.

*Moores's Manual* states, in part,

## ▉ Purpose of Multidistrict Litigation Statute

If more than one civil action involving one or more common questions of fact is pending in different judicial districts, the multidistrict litigation statute authorizes the Judicial Panel on Multidistrict Litigation to consolidate and transfer them to a single district for coordinated or consolidated pretrial proceedings. The purpose of this transfer procedure is to conserve judicial resources and to avoid the delays that would result if all aspects of each action, such as discovery, were conducted separately. However, it must be emphasized that the multidistrict litigation procedure applies only to pretrial proceedings. The statute permits the transferee court to deal with the pretrial proceedings that are common to all of the actions in a single unified setting, but then requires that the actions be remanded to the districts from which they were transferred for trial, if necessary.

1 *Moore's Manual: Federal Practice and Procedure* § 2.07[2] (2003).

The multidistrict litigation statute provides, in part, "Such [multidistrict litigation] transfers shall be made by the judicial panel on multidistrict litigation ...." Proceedings for the transfer of a civil action may be initiated by the judicial panel on multidistrict litigation on its own initiative or by motion filed with the judicial panel by a party to the action. 28 U.S.C.A. § 1407(a), (c) (West 1993).

▉ The Court is not persuaded that it is authorized to transfer this adversary proceeding for coordination or consolidation with the *Securities Litigation*. Section 1407(c) provides that a transfer may be initiated by the judicial panel or by motion filed with the judicial panel by a party to the action. Defendants must file their motion to transfer with the judicial panel. The Court is persuaded that Defendants' motion to transfer must be denied in so far as it seeks a transfer for coordination or consolidation with the *Securities Litigation*.

Defendants also urge the Court to transfer this adversary proceeding pursuant to the federal change of venue statutes, 28 U.S.C.A. §§ 1404 and 1412. Section 1404(a) governs the transfer of "any civil

---

1. William K. Holmes is one of the Plaintiffs. Mr. Holmes was the managing member of the other Plaintiffs, which are entities owned or controlled by members of Mr. Holmes' family. First Amended Complaint, para.3, Document No. 3.

2. *See* Motion of Defendants to Transfer, Exhibit A, Document No. 8.

3. *New York City Employees' Retirement System v. Ebbers, (In re WorldCom, Inc. Securities Litigation)*, 293 B.R. 308, 313 n. 6 (S.D.N.Y. 2003).

action."[4] Section 1412 governs the transfer of bankruptcy cases and adversary proceedings.[5] The statutory language of sections 1404 and 1412 are similar and courts apply the same basic factors when considering motions to transfer under either section.[6] The Court will apply section 1412 to Defendants' motion to transfer since section 1412 specifically governs adversary proceedings.

The Court can transfer an adversary proceeding to a district court for another district, in the interest of justice or for the convenience of the parties. Fed. R. Bank. P. 7087; 28 U.S.C.A. § 1412. Defendants want this adversary proceeding transferred to the Southern District of New York. The district court in New York would assign the adversary proceeding to the appropriate judicial officer.

Rule 7087 of the Federal Rules of Bankruptcy provides:

### Rule 7087. Transfer of Adversary Proceeding

On motion and after a hearing, the court may transfer an adversary proceeding or any part thereof to another district pursuant to 28 U.S.C. § 1412, except as provided in Rule 7019(2).

Fed. R. Bank. P. 7087.[7]

Section 1412 of Title 28 provides:

### § 1412. Change of venue

A district court may transfer a case or proceeding under title 11 to a district court for another district, in the interest of justice or for the convenience of the parties.

28 U.S.C.A. § 1412 (West 1993).

*Collier on Bankruptcy* provides in part;

¶ 7087.02. **Standards Applicable to Venue Motions.**

. . .

The grant or denial of a motion to change venue is in the discretion of the court. The moving party has the burden of establishing by the preponderance of the evidence that transfer is appropriate under 28 U.S.C. § 1412. Some courts have indicated that there is a "strong presumption" in favor of maintaining venue where the bankruptcy case is pending, by reason of the paramount consideration of speedy and economic administration of the bankruptcy case.

In deciding whether an adversary proceeding should be transferred, courts consider a variety of factors, weighing the competing needs and interests of the parties as well as the purposes of the Bankruptcy Code. The cases that list these factors often include factors more pertinent to a determination of whether to change venue of an entire bankruptcy case as opposed to an adversary proceeding, such as "proximity of creditors of every kind to the Court" and the "necessity for ancillary administration if bankruptcy should result." Among the

---

4. § 1404. Change of venue
(a) For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.
28 U.S.C.A. § 1404(a) (West 1993).

5. Bankruptcy Rule 7087 provides that the court may transfer an adversary proceeding pursuant to 28 U.S.C.A. § 1412.

6. *In re Henderson,* 197 B.R. 147, 156 (Bankr. N.D.Ala.1996); *Couri v. Fisher, (In re JCC Capital Corp.),* 147 B.R. 349, 356 (Bankr. S.D.N.Y.1992).

7. Defendants do not contend that the Middle District of Georgia is an improper venue for this adversary proceeding. Therefore the provisions of Bankruptcy Rule 7019(2) are not applicable.

factors that are pertinent to a venue motion concerning an adversary proceeding are:

(1) the proximity of necessary witnesses;

(2) the relative ease of access to proof, especially documentary evidence;

(3) the economic and efficient administration of the estate, including the ability of the trustee to litigate similar claims in the same forum with the same counsel;

(4) location of assets, especially if the proceeding involves valuation of particular assets;

(5) the availability of compulsory process for attendance of unwilling witnesses, and the cost of obtaining the attendance of willing witnesses;

(6) the enforceability of judgment;

(7) relative advantages and obstacles to a fair trial; and

(8) inability of a party to prosecute or defend in the new forum.

10 *Collier on Bankruptcy* ¶ 7087.02 (15th ed. rev.2003).

■ As noted by *Collier*, Defendants have the burden of proving that transfer of this adversary proceeding would be in the interest of justice or for the convenience of the parties. *See Gulf States Exploration Co. v. Manville Forest Products Corp.,* (*In re Manville Forest Products Corp.*), 896 F.2d 1384, 1390–91 (2nd Cir.1990); *Commonwealth of Puerto Rico v. Commonwealth Oil Refining Co.,* (*In re Commonwealth Oil Refining Co.*), 596 F.2d 1239, 1241 (5th Cir.1979), *cert denied* 444 U.S. 1045, 100 S.Ct. 732, 62 L.Ed.2d 731 (1980); *Urban v. Hurley,* 261 B.R. 587, 591 (S.D.N.Y.2001); *Krystal Cadillac–Oldsmobile–GMC Truck, Inc. v. General Motors Corp.,* 232 B.R. 622, 627–28 (E.D.Pa.1999).

A leading treatise on federal civil practice states, in part:

**§ 3851. —Convenience of Witnesses**

Probably the most important factor, and the factor most frequently mentioned in passing on a motion to transfer under 28 U.S.C.A. § 1404(a) is the convenience of witnesses. If the forum chosen by plaintiff will be most convenient for the witnesses, this is a powerful argument against transfer, while if some other forum will better serve the convenience of witnesses, transfer is likely to be granted.

. . .

The most important limitation on transfers to suit the convenience of witnesses is the showing that is required to justify such a transfer. The courts with one accord, have refused to let applications for transfer become "a battle of numbers." The rule is that these applications are not determined solely upon the outcome of a contest between the parties as to which of them can present a longer list of possible witnesses located in the respective districts in which each party would like to try the case. *The party seeking the transfer must clearly specify the key witnesses to be called and must make a general statement of what their testimony will cover.* The emphasis must be on this showing rather than on numbers. One key witness may outweigh a great number of less important witnesses. *If a party has merely made a general allegation that witnesses will be necessary, without identifying them and indicating what their testimony will be the application for transfer will be denied.* Of course a lesser showing is needed if the case already has been tried once, and the court knows itself who the witnesses are and what their testimony will be. But the very few § 1404(a) cases holding that under ordinary circumstances de-

fendant need not make this kind of showing about his expected witnesses are contrary to the overwhelming bulk of authority.

. . .

## § 3853. —Books and Records

The location of records and documents is a factor that should be considered in determining the proper forum. Many records are easily transported and their location is entitled to little weight, and this is particularly true with the development of xerography and the easy availability of copies. But if transfer will bring needed records within the subpoena power, or if moving the records would cause hardship to a business, the court will consider the location of those records in passing on the transfer application.

*As is the case with witnesses, general allegations that transfer is needed because of books and records are not enough. The moving [party] must show the location and the importance of the documents in question.*

15 C. Wright, A. Miller, & E. Cooper, Federal Practice and Procedure §§ 3851 and 3853 (2nd ed. 1986 & Supp.2003). (emphasis added)

■ Turning to the case at bar, Defendant Salomon Smith Barney (hereafter SSB) is a stock brokerage and investment banking firm. Defendant Grubman was a securities analyst for SSB. Charles B. Parker was the retail broker at SSB who managed Plaintiffs' accounts.

Plaintiffs contend that Defendants advised them to purchase and hold shares of stock in a corporation known as MCI/WorldCom, Inc. Plaintiff Holmes contends that on June 25, 1999, he contacted Mr. Parker and placed a "verbal sell order" for Plaintiffs' more than 2.1 million shares of WorldCom stock. WorldCom was then trading at some $92.00 per share. Plaintiff Holmes contends that Mr. Parker persuaded him not to sell. Plaintiff Holmes contends that Mr. Parker advised him to review Defendant Grubman's research reports on WorldCom. Plaintiff Holmes contends that he relied upon the research reports in deciding not to sell Plaintiffs' shares. Plaintiffs contend that Defendant Grubman's research reports were false and misleading, contained fraudulent information, and intentionally omitted material information. Plaintiffs contend the research reports were part of a conspiracy to intentionally conceal the relationship between WorldCom and Defendants.[8]

WorldCom had financial problems and filed a petition for relief under Chapter 11 of the Bankruptcy Code on July 21, 2002. WorldCom's bankruptcy case is pending in the United States Bankruptcy Court for the Southern District of New York.[9] WorldCom's stock is now of little value.

Plaintiffs contend they lost some $190,000,000 by not selling their shares in June of 1999. Plaintiffs contend that they were defrauded by Defendants. Plaintiffs contend that Defendants deliberately, willfully, and fraudulently published misleading research reports on WorldCom's financial condition.

Plaintiffs' eleven-count amended complaint asserts claims for breach of contract, breach of fiduciary duty, violations of The Securities Act of 1933, violations of The Securities Exchange Act of 1934, securities fraud under state laws of Georgia and New York, negligence or negligent misrepresentation, common law fraud, conspiracy, and negligent supervision. Plaintiffs seek compensatory damages of

---

**8.** First Amended Complaint, para. 44–53.

**9.** *In re WorldCom, Inc.*, 296 B.R. 115, 120 (Bankr.S.D.N.Y.2003).

$190,000,000, punitive damages of $100,000,000, and an award of attorney's fees. Plaintiffs contend that this adversary proceeding is a non-core proceeding.[10] Plaintiffs request a trial by jury.[11] Plaintiffs contend that their claims against Defendants are, in part, potential assets of the bankruptcy estate of Plaintiff Holmes.[12]

Plaintiffs note that on November 4, 2002, the court-appointed examiner in the WorldCom bankruptcy case issued a first interim report regarding the relationships between WorldCom, Defendants, and other entities.[13] Plaintiffs note that there is an ongoing investigation by the New York State Attorney General into conflicts of interest at Defendant SSB.[14] The New York State Attorney General filed on September 30, 2002, a complaint in New York state court contending, in part, that WorldCom's former chief executive officer steered underwriting business to Defendant SSB in exchange for favorable stock ratings without disclosing potential conflicts of interest.[15]

Plaintiffs note that the New York State Comptroller filed a complaint in the United States District Court for the Southern District of New York seeking damages from Defendant Grubman and other defendants for more than $300 million of now worthless WorldCom stock that was purchased by the state's retirement fund.[16]

The Court will now apply the standards applicable to a request for change of venue, as stated in *Collier on Bankruptcy.*

**(1)** *The proximity of necessary witnesses.*

Neither Plaintiffs nor Defendants have identified by name any non-party witness other than Mr. Parker. Mr. Parker's place of residence is not shown by the record. Plaintiffs contend that most of their "fact witnesses" reside in Georgia. Plaintiff Holmes resides near Macon, Georgia. Plaintiff Holmes is the managing member of the other Plaintiffs. Plaintiffs contend that "important former employees" of Defendant SSB reside in Georgia.[17] Defendant SSB has offices in Georgia, but it is unclear which, if any, employees residing in Georgia would be necessary witnesses.

Defendants contend that the majority of the relevant witnesses reside in New York. Defendant Grubman resides in New York. Defendants note that substantial litigation is taking place in the Southern District of New York. Defendants contend that the majority of the operative facts at issue took place in New York. Defendants contend that Defendant SSB's equity research and investment banking operations are based in New York. Defendants contend that most of their analyst reports on WorldCom were prepared and generated in New York.

Defendants have not identified specific key witnesses or indicated what their

---

**10.** First Amended Complaint, para. 14.

**11.** First Amended Complaint, para. 14 and 122.

**12.** First Amended Complaint, para. 12.

**13.** First Amended Complaint, para. 36 and Exhibit F. The interim report discusses Defendant Grubman on pages 89–99.

**14.** First Amended Complaint, para. 40.

**15.** First Amended Complaint, para. 40 and Exhibit G.

**16.** First Amended Complaint, para. 42.

**17.** Plaintiffs' Response to Motion of Defendants For Transfer and Memorandum of Law in Opposition to Transfer, page 7, Document No. 21.

testimony will be. Defendants have not disclosed where any specific witness resides, other than Defendant Grubman. Defendants have merely made allegations that most witnesses reside in New York. The Court, from the record presented, simply cannot determine where the key witnesses reside. The Court notes that Defendants have the burden of proof on their motion to transfer. As stated by Wright and Miller in their treatise on federal civil practice, mere general allegations about key witnesses are not sufficient.

(2) *The relative ease of access to proof, especially documentary evidence.*

Defendants contend that most of the research reports at issue were prepared and generated in New York. Defendants contend that their equity research and investment banking operations are based in New York. The Court notes that the documentary evidence would be subject to a motion to produce. Defendants have not shown that the records at issue could not be copied or easily transported. Defendants simply make general allegations concerning the records, which as noted by Wright and Miller, is not sufficient.

(3) *The economic and efficient administration of the estate, including the inability of the trustee to litigate similar claims in the same forum with the same counsel.*[18]

Plaintiffs argue that this litigation is a key asset of Plaintiff Holmes' Chapter 11 bankruptcy estate. Plaintiffs contend that Defendants' fraud caused their financial problems, which in turn caused Plaintiff Holmes to file for bankruptcy relief.

Plaintiffs assert that their litigation against Defendants would be lost in the "morass"[19] of the *Securities Litigation.*[20] The Court notes that this adversary proceeding would not be coordinated or consolidated with the *Securities Litigation* unless the Judicial Panel on Multidistrict Litigation makes the transfer. This Court can simply transfer the adversary proceeding to the Southern District of New York.

(4) *Location of assets, especially if the proceedings involve valuation of particular assets.*

Defendants are accused of issuing fraudulent research reports regarding WorldCom's financial condition. WorldCom has acknowledged that it overstated its income on its audited financial statements by more than $11 billion from 1999 to 2002. Four of WorldCom's senior executives have plead guilty to criminal charges of fraud in connection with the overstatements of income.[21]

The location and valuation of assets does not appear to be a factor in this adversary proceeding.

(5) *The availability of compulsory process for attendance of unwilling witnesses, and the cost of obtaining the attendance of willing witnesses.*

The Court has previously noted that from the record presented, it cannot de-

---

18. Plaintiff Holmes is the debtor in possession in his Chapter 11 case and has all the rights, powers, and duties of a trustee. 11 U.S.C.A. § 1107(a) (West 1993).

19. Morass means, in part, state of confusion or entanglement. Webster's Third New International Dictionary 1469 (1986).

20. Plaintiffs' Response to Motion of Defendants for Transfer and Memorandum of Law in Opposition to Transfer, p. 8, Document No. 21.

21. Defendants' Memorandum of Law in Support of Their Motion for Transfer, p. 3, Document No. 9.

termine who are necessary key witnesses or where they reside. The Court again notes that Defendants have the burden of proof on their motion to transfer.

(6) *The enforceability of judgment.*

This does not appear to be a factor.

(7) *Relative advantages and obstacles to a fair trial.*

The Court is unaware of any prejudice to Plaintiffs or Defendants if a trial was held in the Middle District of Georgia.

(8) *Inability of a party to prosecute or defend in the new forum.*

The Court would note that it may be difficult to ask a debtor in a Georgia bankruptcy case to prosecute an adversary proceeding in the Southern District of New York.

The "desire to avoid multiplicity of litigation from a single transaction" is a factor "considered by the courts as relating to 'the interest of justice.'" 15 Federal Practice and Procedure, § 3854. Plaintiffs and Defendants hotly dispute whether the facts and legal issues in this adversary proceeding are similar to those in the *Securities Litigation.* That case is a multidistrict litigation action pending before the United States District Court for the Southern District of New York. The New York State Common Retirement Fund is the court-appointed Lead Plaintiff. The Judicial Panel on Multidistrict Litigation has transferred more than one hundred individual actions and class actions from across the country for coordinated or consolidated pretrial proceedings.

The defendants in the *Securities Litigation* include certain former executive officers, directors, former directors, and accountants of WorldCom. The Defendants in this adversary proceeding, SSB and Mr. Grubman, are defendants in the *Securities Litigation.*[22]

The Court has previously stated that it does not have authority to transfer this adversary proceeding for coordination or consolidation with the *Securities Litigation.* This Court can simply transfer the adversary proceeding to the Southern District of New York.

Defendants have the burden of proof on their motion to transfer. The Court, on the record presented, is not persuaded that Defendants have carried their burden. The Court is persuaded that Defendants' motion to transfer must be denied.

An order in accordance with this memorandum opinion will be entered this date.

---

**22.** *New York City Employee's Retirement System v. Ebbers, (In re WorldCom, Inc., Securities Litigation),* 293 B.R. 308, 313 n. 6 (S.D.N.Y.2003).